(104 So. 712)

No. 26809.

## BROWN v. WILLOWBROOK BRICK & TILE CO.

(May 25, 1925.)

*(Syllabus by Editorial Staff.)*

1. **Husband and wife** ⟜171(6)—**Wife's lease to corporation in which her husband owned promoter's stock held not hypothecation of her property for husband's debt or for debt of community warranting cancellation.**

   Where husband's only stock in corporation organized to develop brick factory on his wife's separate property, was promoter's stock which was given to him, lease of land by wife to corporation was not hypothecation of her separate property for husband's debt or for debt of community which was subject to cancellation as contrary to Civ. Code, arts. 127, 2398.

2. **Husband and wife** ⟜238(2)—**Where undecided questions, although not raised by pleadings, might be concluded, judgment denying plaintiff's right of action held erroneous.**

   In suit by wife to annul lease of separate property, in which questions whether transaction could not be deemed lease without payment of rent or promise to pay rent, or whether it was valid contract under any other name, were not raised by pleadings, but were not so foreign to pleadings that they might not be deemed foreclosed by judgment denying her right of action, judgment should have been one of nonsuit, and final judgment denying her right of action was error.

Appeal from First Judicial District Court, Parish of Caddo; J. H. Stephens, Judge.

Suit by Mrs. Effie Brown against the Willowbrook Brick & Tile Company, in which five stockholders of the defendant corporation intervened. Judgment for defendants, and plaintiff appeals. Judgment annulled, and plaintiff's suit dismissed, reserving to her right to renew suit.

Lewell C. Butler, of Shreveport, for appellant.

Bullock & Warren and Dhu Thompson, all of Ruston, for interveners.

Stubbs, Theus, Grisham & Thompson, of Monroe, for receiver.

O'NIELL, C. J. This suit is brought by a married woman to annul a lease of her separate property. She signed two such instruments, one five days after the other; the second being a substitute for the first. The suit is to annul both contracts, on the ground that their effect was to hypothecate or incumber the woman's separate property, and to bind and obligate her personally for her husband's debt or a debt of the marital community.

The defendant corporation is in the hands of a receiver. Five stockholders intervened and joined in the defense. They are also creditors of the corporation and indorsers on the corporation's commercial paper for large sums of money. They pleaded an estoppel, because the plaintiff had not sought to annul the lease until the corporation had built a large factory on the land, at a cost of about $60,000, the building of which was observed by the plaintiff from the beginning.

The district court rejected plaintiff's demand, and she has appealed.

The evidence discloses that appellant, a married woman, was induced to dispose of her property, 40 acres of land, by a lease for 99 years, without receiving any price or consideration, and without a stipulation in her favor or obligation on the part of any one to pay or compensate her in any way. But the case, as developed on the trial, can hardly be regarded as one in which the wife hypothecated her property, or bound herself personally, to secure a debt of her husband or of the marital community, in violation of the prohibition in the Civil Code, arts. 127 and 2398.

The land in question was the separate property of Mrs. Brown, acquired by inheritance. Some time before the 29th of January, 1920, her husband, who is called Doctor Brown, and one Raymond Ludwick, undertook to organize a corporation to lease

or take over the 40 acres of Mrs. Brown's land and establish and operate a brick factory on it. The doctor and Ludwick had known each other two or three years; the doctor having been a sales manager for an automobile company, and Ludwick having worked for him as salesman. Neither of them had been in the brick business or knew anything about it. But they had the clay on Mrs. Brown's land analyzed, had some of it made into sample bricks, and were convinced that it was suitable to the purpose.

Having no financial means to begin their enterprise, Dr. Brown and Ludwick approached and interested in the plan two men who were already brick manufacturers, and who were financially responsible, namely, McDonald and Jimerson. The four men agreed to organize a corporation to take a lease on the land and build and operate a brick factory on it. McDonald and Jimerson, who are defending this suit in the capacity of interveners, claim that Ludwick already had a lease from Mrs. Brown, and that they intended that the corporation would buy the lease from him for stock in the corporation. The evidence, to the contrary, is that the four incorporators agreed to the organization and the taking of the lease before Mrs. Brown leased to Ludwick, and with the intention of leasing from her. As a matter of fact, Ludwick did not procure his lease from Mrs. Brown until the day on which the charter of the corporation was signed; and there is evidence that the reason why the lease was taken first in Ludwick's name was that the incorporators believed that it would not be legal for Mrs. Brown to make a lease to a corporation in which her husband had stock. That evidence is corroborated by the fact that, in the distribution of the promoters' stock, an excess of $5,000 was given to Dr. Brown, not to Ludwick. In the absence of any other ex-planation, it may well be assumed that this extra $5,000 of stock was the price of the lease on Mrs. Brown's land. None of the four incorporators paid anything for his stock. Dr. Brown took $16,250 of the stock, and the three other promoters took $11,250 each, making $50,000 of promoters' stock. It was agreed that the remaining $50,000 of the authorized capital of $100,-000 would be sold by the incorporators at par, less a salesman's commission of 25 per cent., and that the net proceeds would be used for building the brick factory.

On the 29th of January, 1920, Ludwick obtained from Mrs. Brown the instrument purporting to be a 99-year lease on the land, and on that day the charter of the Willowbrook Brick & Tile Company was signed by the four incorporators, namely, Dr. Brown, who was made president, Jimerson, who was made vice president, Ludwick, who was made secretary, and McDonald, who was made treasurer. In the document signed by Mrs. Brown it was said that Ludwick paid $25,000 cash, as the price of the lease, but in fact nothing was paid or promised. That is perhaps not important, as to that contract, because Ludwick did not transfer it to the corporation or record it, and it was afterwards obtained by Dr. Brown. Whether he got it directly from Ludwick or otherwise is a matter of doubt. At any rate, that lease is not in contest, or mentioned in the plaintiff's petition, because it was superseded by the lease which Mrs. Brown afterwards gave to the corporation, represented by the two instruments, one dated the 10th and the other the 15th of May, 1920, which are the contracts in contest.

The charter of the corporation was signed in McDonald's store, in Ruston, where the incorporators met at 8 or 9 o'clock at night; the explanation being that, immediately after obtaining the lease from Mrs. Brown at her home at Blanchard, La., on the 29th

of January, 1920, Dr. Brown and Ludwick went by train to Ruston, where McDonald and Jimerson lived, and where the charter was signed. An excerpt from the minutes of the directors' meeting, held that night in McDonald's store, explains how the stock that was issued to the four incorporators was to be paid for, viz.:

"On motion duly made and carried, the board ordered that the subscribers to the capital stock of this company be called upon to pay the amount of their subscription as follows:

"On motion duly made and carried, the proposition of Raymond Ludwick to sell and transfer to the company a lease on forty acres of land, situated near Blanchard, La., to the clay or surface rights, for a period of ninety-nine (99) years, for the sum of twenty-five thousand dollars, was accepted, and J. A. Jimerson authorized to sign proper papers accepting same for the company, and authorizing the treasurer to make payment in full for same when lease is properly executed."

It appears that the principal consideration for the giving of the $22,500 of promoters' stock to McDonald and Jimerson was the influence and assistance which they were to give in financing the corporation, and the advantage which their technical knowledge and experience would be to the corporation. And it appears that they did give considerable aid in that respect. Some money was borrowed, some stock was sold, and the factory was built, costing about $60,000, and was operated for a while.

On the 26th of March, 1920, when the factory was being built, Dr. Brown wrote a letter to McDonald, complaining that Ludwick had neglected to transfer his lease to the corporation, and advising McDonald to get the lease and record it. Thereafter Ludwick gave up the instrument, which was never recorded. He withdrew from the company, or was let out, and left the state, and was not heard from again by any member of the company.

In May, 1920, the corporation being in financial difficulties, two men of 'means,

namely Hodge and Hunt, were taken in as stockholders. Mrs. Brown was then requested to give a lease to the corporation in lieu of the one which she had given to Ludwick and which her husband then had. On the 10th of May, 1920, Mrs. Brown, at the request of her husband, signed the document purporting to be a lease to the corporation for 99 years for $25,000 cash. As a matter of fact, no price was paid or consideration given or promised. Hodge was not satisfied with the provision in the instrument regarding the removal of the buildings from the land in the event the company should abandon the lease, which the company had the right to do at any time, by the terms of the instrument. Accordingly, on the 15th of May, Mrs. Brown, at the request of her husband, signed the new instrument, which, after the clauses purporting to lease the land and describing it, declares:

"It is agreed and understood between the parties hereto that the lessee shall have full and complete possession of said premises, to use in any and every way necessary or desirable for constructing, maintaining and operating brick and tile plants, or any industry or business the said company or its successors, assigns or sublessees may engage in; it being understood that the said lessee shall have the privilege of extracting from the said land any and all clay deposits necessary in its operations, and in all respects to use the said property as completely and as fully as if full and complete ownership were conveyed herein.

"It is understood that there has already been executed on this land an oil, gas and mineral lease in favor of Willowbrook Brick & Tile Co., Inc., dated May 10th, 1920, and all rights under said lease shall remain in full force and effect; it being the intention that this contract shall not in any way alter the terms of said mineral lease.

"It is further understood and agreed between the parties hereto that in the event this lease contract should be terminated by the mutual consent of the parties hereto the lessee shall have the right to remove all improvements, buildings, materials and equipment of every kind which have been placed thereon by the lessee or its assigns from said premises.

"The term for which this lease is executed is

declared to be ninety-nine (99) years, and the consideration for which said lease is made is the sum and price of twenty-five thousand dollars ($25,000) cash in hand paid, the receipt of which is hereby acknowledged."

There was no price or consideration paid for this new lease, no obligation in favor of the so-called lessor, or stipulation for the payment of rent or compensation of any sort.

Hodge and Hunt then took stock in the corporation, and on their indorsements of the company's notes, which were not yet paid when this suit was tried, they invested more than $28,000 in the corporation. Thereafter the corporation struggled along, but in 1923 went the way of the majority of enterprises that begin without enough capital.

[1, 2] On objections urged by counsel for the defendant and interveners, the court restricted the evidence to the issue raised by the pleadings; that is, to the contention that the transaction was a hypothecation of the wife's property for her husband's debt or for a debt of the community. The theory of the plaintiff's attorney was that, when Dr. Brown subscribed for stock in the corporation, he became indebted to the corporation for the amount of his subscription; and, when Mrs. Brown gave the lease, it was a hypothecation of the land for the husband's debt, or community debt. The argument is unsound for two reasons. The first is that Dr. Brown did not subscribe for any stock except the $16,250 of promoters' stock that was given to him. Second, the so-called contract of lease was not a pignorative contract, or hypothecation of the land. Whether the transaction could be deemed a lease, without the payment of rent, or promise of payment of rent in any form, and whether it is a valid contract under any other name, are questions which are not in the pleadings. Those questions, however, are not so foreign to the pleadings that they might not be deemed foreclosed by the judgment that has been rendered in this suit, if it should remain as it is—an absolute rejection of the plaintiff's demand. The evidence does not warrant a judgment finally denying a right of action on her part. The judgment ought to be one of nonsuit.

The judgment appealed from is annulled, and plaintiff's suit is now dismissed as in case of nonsuit, reserving to her the right to renew her suit for any cause or right of action that she might have urged. Appellant is to pay the costs of the district court and appellees the costs of appeal.