No. 3037

Second Circuit

---

## BRANTLEY v. SMITH

---

(May 18, 1927. Opinion and Decree.)

---

(*Syllabus by the Editor*)

1. Louisiana Digest—Domicil—Par. 3, 13.

One who leaves the state temporarily intending to return when the first opportunity for work presents itself, making no effort to become a resident or voter in that state, did not lose this residence or legal domicil in Louisiana.

2. Louisiana Digest—Domicil—Par. 13.

Where one is temporarily enforced to leave his domicil he does not lose it thereby.

3. Louisiana Digest—Domicil—Par. 3; Elections by the People—Par. 3.

One who has not been in Louisiana for two years and never paid a poll tax has not a domicil in this state and is not entitled to vote.

4. Louisiana Digest—Domicil—Par. 3, 11.

One who left one parish to remain permanently in another, returning only in the event of a change in business, has changed his domicil and is no longer qualified to vote in an election at his former domicil.

5. Louisiana Digest—Elections by the People—Par. 42, 49, 64.

Under the election laws of Louisiana, ballots on which were placed additional cross marks, checks, or lines outside the square opposite the candidate's name are rejected as marked ballots.

Appeal from the Third Judicial District Court of Louisiana, Parish of Union. Hon. S. D. Pearce, Judge.

Action by Bat Lee Brantley against O. E. Smith, et al.

There was judgment for defendants and plaintiff appealed.

Judgment affirmed.

J. W. Elder, of Farmerville, attorney for plaintiff, appellant.

H. G. Fields; Edward Everett, Jr.; G. H. Holloway, of Farmerville, attorneys for defendants, appellees.

ODOM, J. Plaintiff and defendant were rival candidates for the office of town marshal of the town of Farmerville, Louisiana, at a primary election held on May 3, 1927.

According to the count of returns made by the commissioners of election, the defendant, Smith, received 134 votes and the plaintiff, Brantley, received 133.

Within forty-eight hours after the closing of the polls plaintiff filed this contest, alleging that the commissioners of election had allowed Mrs. Aubrie E. Rabun, Doyle Smith, Mrs. Doyle Smith, Mrs. Blake Al-

britton and Willie Nolan to vote at said election over his protest; that they were not qualified electors; that Mrs. Rabun, Doyle Smith and Mrs. Doyle Smith were not qualified electors for the reason that they had not been bona fide residents of the state for two years preceding the election and had not been residents of the town of Farmerville for four months; that Mrs. Blake Albritton was not 21 years of age and had not been a resident of the state for two years preceding the date of the primary; that Willie Nolan had moved to the town on January 17, 1927, less than four months previous to the election, and, further, that none of said parties had paid poll taxes for the two years previous to 1927.

He alleged that if these five persons had not been permitted to vote for the defendant at said primary he would have been nominated for the office.

Defendant, in answer, set up that he was legally nominated, having received a majority of all the votes cast; that each of the voters challenged by plaintiff was legally qualified and properly permitted to vote. In the alternative, he alleged that the commissioners of election had permitted R. G. Taylor, Walter Daniel Edwards and Mrs. J. M. Sally to vote, whereas said parties were not qualified electors of the town, none of them having a residence there; that said parties each voted for plaintiff, and that he protested said votes when they were cast. He asked that the court declare them ineligible to vote for those reasons, and that the number of votes counted for Brantley by the commissioners of election be decreased by three.

In addition thereto, he alleged that the commissioners of election rejected, as marked, two ballots which were properly cast for him, which ballots, on a recount, should be counted for him.

He further alleged one ballot, spoiled by improper marking, was counted by the commissioners for plaintiff, which ballot should be excluded by the court; and, finally, that a proper count of the legal ballots cast at said election would show that he had received 136 votes to 129 for his opponent.

Upon control, the lower court excluded the votes of Mrs. Rabun, Doyle Smith, Mrs. Doyle Smith and Mrs. Albritton, all challenged by plaintiff and cast for defendant, Smith, reducing the total number of votes cast for Smith to 130. He rejected plaintiff's challenge of the vote of Nolan, holding that he was properly permitted to vote. He further held that R. G. Taylor, Mrs. J. M. Sally and Walter Daniel Edwards, all of whom voted for plaintiff, and were challenged by defendant, were disqualified. He also held that one ballot cast for plaintiff and counted for him by the commissioners, was a marked and illegal ballot and should have been rejected by the commissioners; thereby reducing the number of votes counted by the commissioners for Brantley from 133 to 129, leaving Smith the nominee by one vote.

He ordered the Democratic Executive Committee for the Town of Farmerville to declare Smith the nominee and to certify his name as such to the secretary of state. Plaintiff has appealed.

OPINION ON THE MERITS

Each of the parties, in the pleadings, has set up the illegality of the election because the ballot used was not the form required by the statute. However, they plead illegality in the alternative only, and ask that the court consider that question only in case it is unable to reach a satisfactory conclusion on the merits. As neither side has pressed their alternative plea, we shall go direct to the merits.

. The main contention of each side is that certain persons were permitted to vote who were not qualified. It is to the interest of all parties that the court pass upon the qualifications of those voters, for if the court should hold that the election was void on technical grounds and order another primary, the same questions would probably be raised and presented again.

On the merits, we hold that Smith was legally nominated.

Plaintiff challenged the votes of Mrs. Rabun, Doyle Smith and his wife, Mrs. Murrell Smith. These voted for the candidate Smith. The lower court sustained the challenge, and we think it erred in doing so.

The testimony shows that Doyle Smith was born, reared and married in Union parish. He married Murrell Rabun, the daughter of Mrs. Rabun, who lived in the parish of Union for many years previous to this election. After his marriage he lived with his wife in the home of his mother-in-law in Ward 2 of the parish, several miles from the town of Farmerville. His desire and intention was to live in Union parish and he sought employment in Farmerville. Failing to get work there, he secured temporary employment at Huttig, Arkansas. He and his wife went to Huttig in the early part of 1926, where they remained until some time in August of that year. Before leaving, however, for Huttig, he went to friends in Farmerville and informed them that his employment at Huttig was only temporary, that he did not intend to remain there, and asked them to assist him in getting work in Farmerville. He went to the manager of an automobile concern in Farmerville and left his application for work, with the request that as soon as there was an opening that he be given work in that establishment, asserting that it was his intention to return as soon as he could procure work. He and his wife took with them to Huttig a few articles of furniture, a bed, a dresser, and possibly a few chairs, and, we infer, did light-housekeeping there. His testimony is that they rented apartments. They left, however, at their former home in Union parish, the major portion of their furniture, a living-room set, cook-stove, and other furniture, their cows and chickens. This furniture remained in their apartment, and the cows and chickens remained on the premises previously occupied by them. They left an establishment to which they could and intended to return as soon as Smith could get work in Farmerville. They took to Arkansas only enough of their belongings to enable them to live in small apartments during their temporary stay there.

The testimony that they retained their establishment in Union parish during their absence and that they intended all along to maintain their residence in that parish and to return when the first opportunity to get work presented itself is undisputed and is borne out by subsequent events. They acquired no property in nor did they make any effort to become residents or voters in the state of Arkansas.

Under the circumstances, we hold that Smith and his wife did not lose their residence or legal domicil in Louisiana.

See:

State ex rel. Hodges vs. Joyce, 128 La. 434, 54 South. 932.

Caufield vs. Cravens, 138 La. 283, 70 South. 226.

As to Mrs. Rabun, she never left the state at all, except to visit her daughter and son-in-law in Huttig, and then only at short intervals.

Early in the month of August, 1926, Smith procured work in or near the town of Farmerville and on August 12 of that year he, with his wife and Mrs. Rabun, moved into the Lee Hartman residence in the town of Farmerville. They registered as voters there and lived in the town continuously until March 21. Having lived in the town continuously for more than four months with the intention of making that their permanent residence and domicil, they acquired the right to vote in town elections.

But, on March 21, they moved out of the town to the residence of one Odom, who lived just outside the corporate limits, where they remained until April 19, when they moved back into the town, where they lived on the date of the election.

It is claimed by plaintiff that even if it be conceded that these parties acquired a legal domicil in Farmerville, they lost it when they moved out on March 21. Let us see if they did.

As stated, they took up their abode in the Hartman residence in the town of Farmerville on August 12, 1926, and intended to remain there and become permanent residents of the town. About March 21 an automobile concern purchased the Hartman lot and the house in which the Smiths and Mrs. Rabun were residing for the purpose of demolishing the residence and erecting on the lot a garage. Said concern demanded immediate possession of the property and ordered Smith and his family to move out. Smith tried to obtain a house in the town in which to live but could find none. It being necessary for him to move and being unable to get quarters in the town, he and his family moved temporarily to Odom's residence outside of the town.

Smith and Mrs. Rabun testified that they never intended to lose their domicil in the town, that they moved out because they were forced to do so, that they intended to move back as soon as a house could be obtained, and that at the first opportunity they leased another residence in the town and moved back on April 19, where they resided together on the date of the election.

Under such circumstances, they did not lose their domicil in the town. Their absence from the town was enforced. They never intended to move permanently from the town.

Enforced temporary absence from one's domicil does not work a loss thereof.

Caufield vs. Cravens, 138 La. 283, 70 South. 226.

These votes were properly counted for Smith by the commissioners and improperly rejected by the court.

With reference to the payment of poll taxes by Mrs. Rabun, Doyle Smith, and his wife, Mrs. Smith, the testimony of the sheriff and ex-officio tax collector shows that Mrs. Rabun and Mrs. Smith had paid their poll taxes for the years 1926 and 1925, and that Doyle Smith had paid the only poll tax assessed to him, that for 1926, he having become of age during that year.

As to the vote of Willie Nolan, the ower court properly held that it should be xcluded.

Mrs. Albritton testified that she had never resided in Louisiana until March, 1926. Therefore, on the date of this election she had been in the state less than two years. Not only that, she had never paid a poll tax here.

As to the vote of Willie Nolan, the lower court held that he was a legal voter and that his vote was properly counted for Smith.

We have some doubt as to the correctness of the court's ruling on this point, but inasmuch as the results will be the same if his vote be excluded we shall not pursue the point further. Excluding his vote from those which the court counted for Smith and adding those of Mrs. Rabun, Doyle Smith and his wife, Mrs. Smith, the defendant still has 132 votes, and unless we find that Brantley is entitled to more votes than the court gave him, 129, Smith has a majority and is the nominee.

As already stated, Smith challenged the votes of R. C. Taylor, Mrs. Sally and Walter Daniel Edwards, each of whom voted for Brantley.

Taylor was born and reared in Union parish and for five years previous to November, 1926, had resided in the town of Farmerville. During that month he and the Millers formed a copartnership, each being equally interested therein, and established a drug-store in Arcadia, Bienville parish. Upon the opening of the drug-store in Arcadia Taylor left the town of Farmerville and moved to Arcadia and took charge of the business. He is a single man and took with him, bag and baggage, all his earthly possessions. He left behind him no establishment to which he might return, no quarters. He testified that he intended to remain and live in Arcadia and run the business. He said, however, that if the venture proved unprofitable, or if they sold the business, he would return to Farmerville. But his testimony makes it clear that he moved to Arcadia to remain permanently and would have returned only in event of a change in business. He remained there more than five months and was living there when the election was held.

Having removed from the parish he was no longer qualified to vote in a municipal election in Farmerville.

As to Mrs. Sally, the testimony shows that, prior to her marriage to J. M. Sally, she lived in Farmerville, but more than a year prior to the election she and her husband moved to West Monroe in the parish of Ouachita, where her husband engaged in the contracting business and where they were still living on the date of the election. On going to West Monroe they leased a dwelling in which they lived until they built one for themselves, into which they moved as soon as it was finished in the late fall of 1926. When the flood waters inundated that portion of the city where they resided in April of this year, Mrs. Sally left temporarily and went to Farmerville. As stated, her husband is engaged in business in West Monroe; they have built a residence there, where they have resided and were residing at the time of this election. The testimony shows that they established a permanent residence in that city. Mrs. Sally was, therefore, no longer qualified to vote in a municipal election in Farmerville.

Therefore, the votes of Taylor and Mrs. Sally, who voted for Brantley, were properly excluded by the court.

The lower court excluded the vote of Edwards, who also voted for Brantley.

It is not necessary for us to decide whether the ruling was correct or not, because even if Edwards' vote be counted for Brantley he would still have only 130, after excluding the votes of Taylor and Mrs. Sally.

As to the alleged marked ballots.

One of the ballots counted for Brantley by the commissioners was properly ex-

cluded by the court. There were on that ballot two distinct cross-marks, one at the top of the ballot opposite the words "Parish of Union" and the other in the square opposite Brantley's name. The voter evidently intended to vote for Brantley, but he spoiled the ballot by marking it at a place other than opposite the name of the candidate voted for. The superfluous mark is very distinct. It could not have been made by accident.

In the case of Vidrine vs. Eldred, 153 La. 779, the court held that ballots on which there were placed additional cross-marks, checks, or lines outside the square opposite the candidate's name should be rejected as marked ballots.

There were two ballots thrown out by the commissioners as marked ballots; these are claimed by Smith; the court correctly sustained the commissioners. One of the ballots has a cross-mark in the space opposite Smith's name; just above and slightly to the left of the cross there is a distinct pencil mark three-eighths of an inch long. The other ballot has two distinct cross-marks on the right-hand side, one within the square opposite Smith's name and the other just above it.

Under the authority of the cited cases, these were properly excluded as marked ballots.

The net results of our findings are therefore as follows:

We add to the number of votes, 130, found by the lower court to have been received by Smith, those of Mrs. Rabun, Doyle Smith and Mrs. Doyle Smith, making for him 133.

We exclude, as doubtful, the vote of Nolan, leaving Smith 132.

We add to Brantley's vote, 129, as found by the court, that of Edwards as being doubtful, making for Brantley 130.

We approve the lower court's ruling in all other respects.

Smith, therefore, has a majority of two votes.

For the reasons assigned, it is therefore ordered, adjudged and decreed that the judgment appealed from be affirmed, with costs.

———

REYNOLDS, J. I concur in the decree on the merits. Further, the five votes attacked in plaintiff's petition are legally registered and not subject to attack on the grounds set out in the petition, except for the non-payment of poll tax, and that attack is not sustained by the evidence.

Perez vs. Cognevich, 156 La. 331, 100 South. 444.