**STATE ex rel. CARR v. STEELE.**

**No. 6261.**

Court of Appeal of Louisiana.   Second Circuit.

Jan. 13, 1941.

Rehearing Denied Feb. 4, 1941.

Writ of Certiorari Denied March 3, 1941.

T. M. Hayes, Jr., of Monroe, for appellant.

J. Norman Coon, of Monroe, for appellee.

HAMITER, Judge.

At a Democratic primary election held in the Fall of 1936, respondent E. B. Steele received the nomination for the position of member of the Caldwell Parish School Board from Ward 5. An opponent was relator, J. W. Carr. At the general election that followed, in which the said Carr ran as an independent, success again attended Steele's efforts. In due time the successful candidate qualified for such office and in January, 1937, commenced serving the six-year term for which he was elected.

Acting upon a petition charging Steele's removal from the State and the existence of a vacancy in the mentioned office, together with certain evidence tending to support the charge, the Governor of Louisiana on January 13, 1940, appointed and commissioned the said J. W. Carr to fill the asserted vacancy for the unexpired portion of the term. This appointee, on January 15, 1940, took the required oath and otherwise sought to qualify for the office.

When the Caldwell Parish School Board convened in regular session on April 2, 1940, Carr appeared before it, presented his commission, and asked to be seated as a successor to Steele who was then present and sitting as a member. The request was denied, after due consideration had been given thereto, and Steele was recognized as the legal representative on the board from Ward 5.

Following such recognition, Carr instituted this action. He prays:

"* * * That there be judgment rendered in favor of the State of Louisiana on the relation of John W. Carr and against the said defendant, E. B. Steele, recognizing relator as being entitled to and as such sent into possession of the office as a member of the Caldwell Parish School Board from Ward Five of said Parish, to the end

that he may exercise the duties of said office and receive the fees and emoluments of same.

"Relator further prays that this Court may decree that there existed a vacancy in said office at the time the Governor of this State issued a commission in favor of relator to said office, and especially on January 15, 1940, when relator took the oath of office and qualified for same.

"Relator further prays that this Court decree that the said E. B. Steele has been usurping, intruding into and unlawfully holding and exercising and attempting to remain in possession of said office all in bad faith and offending the rights of your relator, and to that end relator prays that this Court declare that said defendant be excluded from said office."

The gravamen of relator's complaint is:

"That on or about two years ago the exact date of which relator does not know, the said E. B. Steele permanently moved from Ward Five, Caldwell Parish, Louisiana, and changed and established his domicile at Birmingham, Alabama, where he has continued to live, reside and maintain his domicile for approximately the past two years. In this connection relator shows that in the summer of 1939, the exact date of which relator does not know, the entire family of E. B. Steele permanently moved from Ward Five, Caldwell Parish, Louisiana, and have since continued to live and reside with the said E. B. Steele at the home established by him and for all of them at Birmingham, Alabama, which is and has for the past two years been his domicile."

Respondent filed exceptions of no cause of action, no right of action and non-joinder of parties. All were overruled. None is urged in this court.

Issue was joined through the filing of an appropriate answer. Respondent insists therein that continuously since his election as a school board member he has been a resident of Ward 5 of Caldwell Parish, Louisiana.

On a trial of the merits of the case, relator was granted judgment in accordance with the prayer of his petition; and respondent brings this appeal.

To be eligible to hold office in Louisiana, a person must be a citizen of this state and a duly qualified elector of the political subdivision wherein the functions of the office are to be performed; and if he changes his residence from such subdivision in which he holds the office, the office is thereby vacated. Article 8, Section 13, of the Louisiana Constitution of 1921. An essential factor for being a duly qualified elector is that "he shall have been an actual bona fide resident of the State for two years, of the parish one year, * * * and of the precinct, in which he offers to vote, three months next preceding the election." Article 8, Section 1, of the Louisiana Constitution of 1921; Act 122 of the extra session of the Louisiana Legislature of 1921. Any vacancy in the membership of school boards caused by death or otherwise shall be filled by appointment by the Governor. Section 17 of Act 100 of 1922.

It is conceded by the litigants that the sole issue in this case involves the above stated provisions of law and is whether or not respondent Steele was an *actual bona fide resident* of Ward 5 of Caldwell Parish, Louisiana, on January 13, 1940, this being the date of the Governor's appointment of relator. If he was, no vacancy then existed and the appointment was without effect. If otherwise, Carr was legally commissioned and is entitled to the office.

The pertinent facts disclosed by the record, in addition to those heretofore stated, are as follows:

Respondent Steele was born and reared in Ward 5 of Caldwell Parish, Louisiana, and was therein engaged in farming at the time of and for a while after his attaining the age of majority. In 1925, he commenced railroad work in the capacity of locomotive fireman with the Alabama and Great Southern Railroad, and followed that vocation until 1929. There was acquired by him, in the year 1930, a farm located in said Ward 5 and consisting of 150 acres of land. On this, he, together with his wife and two children, established a home, and carried on farming operations from year to year. In 1938, he sold 80 acres of the property, retaining the remaining 70 acres.

In 1937, after his election and the beginning of service as a school board member, Steele was solicited to work for his former railroad employer as a member of the extra-board. This classification provided only temporary work. Consideration was given the offer, however, because of financial reverses that had been experienced and had created for him a comparatively large indebtedness; and he journeyed to Birmingham, Alabama, as requested. His wife and children remained at home. This trip required his absence from the farm of ap-

proximately three weeks. On December 15, 1937, he asked for and received an opinion from the Attorney General of Louisiana respecting the legal effect of the railroad employment on his school board position. That official advised in part as follows:

"Considering the constitutional provisions quoted above, and previous opinions rendered by the Department on the subject matter and applying same to the facts in your case, if we are correct in our assumption that your removal from ward 5 of Caldwell Parish is only temporary, then we are of the opinion that you have not vacated your office as member of Caldwell Parish School Board from Ward 5, and that you legally continue to hold said office and serve in the capacity of school board member, to which office you were elected by the voters of Ward 5. This, of course, would not be the case if you have actually and permanently removed from the ward in which you were elected."

From December, 1937, until May, 1938, he and his family remained on and cultivated the farm. Thereafter further assignments from time to time, as a member of the extra-board, were given him by the railroad company; and on the respective terminations of these assignments, which occurred thrice in 1938 and once in 1939, he returned to Ward 5 and resumed his farming operations. Up until September, 1939, his family continuously resided in their home.

In the early Fall of 1939, his son entered military training, while his daughter went to live with his brother in another ward of Caldwell Parish so that she could obtain adequate facilities for completing her remaining two years of high school study. At about this time respondent sold some of his livestock, the sale affecting two cows, two mules and some hogs. He retained a certain number of hogs and one mule. Also, he entered into a rental agreement with one Albert Kelly under which the latter would farm the land during the 1939–40 season on a share basis of one-third and one-fourth; and with respect thereto respondent agreed to and did furnish his mule, all of his implements and tools, the required fertilizer, and he paid the wages of an assisting farm laborer.

It was in September, 1939, that Mrs. Steele decided to join her husband where he was working. In view of this decision a portion of the furniture, that is, a dining room suite, a bedstead and a chest of drawers, was stored with respondent's

brother about five miles away; the remainder of the household goods was left in the home, this being a living room suite, two chairs, a refrigerator, a table, a cook stove, a bedstead, all cooking utensils and a lot of canned fruit and other foods.

On October 1, 1939, about two weeks after Mrs. Steele and the children departed, Kelly, with his family, moved into the house and commenced farming operations.

In his work as a member of the railroad's extra-board, or in other words as a relief employee, respondent operated from numerous cities. At different times he was stationed at Chattanooga and Wahatchie, Tennessee, Birmingham and Tuscaloosa, Alabama, Trenton, Georgia, and Meridian, Mississippi. He remained at no one place longer than sixty days. He and his wife stayed in rooming houses or furnished apartments, these being rented for two weeks at a time. His monthly income ranged from $135 to $250, it being dependent on the amount of work given him and the mileage actually travelled. His indebtedness, since the extra-board employment began, was reduced from $1,100 to approximately $450. It was his intention to continue the railroad work until the indebtedness was liquidated; then he purposed to devote all of his time and efforts to his farm.

The Caldwell Parish School Board met in regular session every three months. Since the commencement of his services as a member thereof in January, 1937, respondent attended every regular meeting and was absent at only one special meeting. Furthermore, once each month he returned to Ward 5 and to his farm, spending a few days there during each trip and usually staying at his father's home at night. Occasionally he had meals with Kelly; and he could, stated such tenant, spend his nights there without charge if he so desired.

The house of his father was in the immediate vicinity of the farm, and respondent contributed to some extent to that parent's support. During the winter, money was given to him monthly; while throughout the year groceries were provided.

Respondent's only bank account has been and is carried in Caldwell Parish; and since the commencement of his railroad employment in 1938, all banking of his income has been done there. When working, he made deposits twice each month. Furthermore, current charge accounts were maintained with several of the stores in that parish.

Respondent Steele is a registered voter only in Ward 5 of Caldwell Parish, where he participated in the elections of January, 1940. The property tax exemption that is granted to Louisiana citizens was applied for and obtained on his farming land and improvements for the years 1939 and 1940. The license tax on his automobile, however, was paid in the State of Alabama rather than in Louisiana; and this was done, testified respondent, to prevent his having "to buy two sets of licenses."

There have been many cases in the jurisprudence of this state interpreting the important and controlling term "actual bona fide resident." Chief among these appear to be State ex rel. Hodges v. Joyce et al., 128 La. 434, 54 So. 932, Caufield v. Cravens, 138 La. 283, 70 So. 226, Hall v. Godchaux, 149 La. 733, 90 So. 145, Brantley v. Smith, 6 La. App. 182, and Melerine v. Democratic Parish Executive Committee, 164 La. 855, 114 So. 711.

In the Hodges case, the qualifications of defendant Cannon as to residence in Ferriday, Louisiana, was challenged, it being contended by relator that such residence was abandoned when he went to work in Mississippi. The court commented and held as follows:

"* * * the solution of the question depends on the answer to the inquiry whether the absence of the defendant is temporary or permanent in its nature. Defendant frankly testified that he expected to remain in Mississippi as long as he could hold his present job, but would return to his home at Ferriday if he lost his job, or got sick, or could obtain a better job in Louisiana. Defendant left his trunk and part of his clothing in Ferriday, which he calls 'home.' He has no other abode in this state.

"The trial judge found that the defendant had not changed, nor intended to change, his residence, and we cannot say that his finding is manifestly erroneous on the face of the record."

Anent its interpretation of the term "actual bona fide resident," the Supreme Court stated in the Caufield case [138 La. 283, 70 So. 227]:

"The question is one largely of intention, and the intention of a person, in that respect, is determined by his expressions thereof, at times not suspicious, and his testimony, when called on, considered in connection with his conduct and the circumstances of his life. * * *

"The term, 'actual bona fide resident,' as used in the Constitution, cannot reasonably be interpreted to mean that, in order to acquire, and, still less, to retain, such status, one must remain continuously in the town, or upon the premises, of the residence, and the status described is not therefore affected by temporary absences, occasioned by considerations of duty, business, health, or pleasure, unless, being voluntary, they extend beyond prescribed periods, or, are accompanied by the acquisition of residence elsewhere * * *. Nor, is it affected by the fact that one resides in a hotel, or boarding house, or in the house of some family connection, since the law prescribes no condition in that respect."

It is further said in the opinion of the last mentioned case that the words "bona fide" were used "to emphasize the importance of 'good faith,' as a factor in the determination of the question of residence, and, by the application of that test, to prevent a person who has two or more residences from calling the one or the other his legal residence as it may suit his interest or convenience, but to the prejudice of the rights of others."

The court observed in the Hall case, in its majority opinion, that the law "does not allow one to become an elector by constructive residence, nor is the matter controlled solely by intention, no matter how bona fide it may have been." [149 La. 733, 90 So. 150.] It was stated, in speaking of the words "actual bona fide resident," that: "* * * In the nature of things, they cannot be said to mean that he must occupy his place of abode every moment during the period of time necessary to become a resident in the sense of qualifying him as an elector; for the necessities of the case require that he should be permitted to pursue the ordinary affairs of life. However, we think that he is required to maintain such a relation with the place or premises so selected as will entitle him at his will, and without making new arrangements therefor upon each return, to occupy such place whenever his necessities or pleasure require, and this without having to ask the permission of some one else. * * * If the individual maintains a place to which he can return, as above indicated, he does in law have an actual bona fide residence, and when away under the call of business or pleasure is an absent actual bona fide resident. But we cannot see how it can be said that he is such a resident when he possesses no other right than that of going to a hotel, regis-

tering, and being assigned a room, with no fixed relation thereto, as has been shown to have been the case with Judge Godchaux."

The Caufield decision was discussed in the opinion of the Hall case; and the court distinguished between the respective situations of Judge Godchaux, a person of considerable wealth and prominence, and of Caufield, a railroad conductor who resided sometimes at hotels and on other occasions at the home of his father-in-law, as they related to the maintenance of definite places of abode. The following language, in this respect, was used: " * * * He [Caufield] was, presumably, a man of limited means, and did not maintain a separate domestic establishment to be occupied by no one but himself. His situation was dictated by necessity, and not by choice, but he did maintain a fixed place of abode in the sense and to the extent which the circumstances permitted. In the present case no such condition obtained, and the defendant's action was controlled solely by choice and was supported purely by intention while away from the hotel."

The holding in Brantley v. Smith, supra, as the syllabus accurately reflects, was that: "One who leaves the state temporarily intending to return when the first opportunity for work presents itself, making no effort to become a resident or voter in that state, did not lose this residence or legal domicil in Louisiana."

Extracts from previous cases of the Louisiana Jurisprudence bearing upon the interpretation of the term in question were quoted in Melerine v. Democratic Parish Executive Committee, supra, [164 La. 855, 114 So. 713], following which the court commented: "And when the conditions are as above stated, 'the question is one largely of intention.' Caufield v. Cravens, supra."

In the instant case, it appears to us that respondent Steele had no intention of removing permanently from Ward 5 of Caldwell Parish and of establishing a residence elsewhere. Most significant, and strongly supporting this conclusion, are the circumstances, among others, that he carried none of his furniture or canned foods with him; that he retained all of his farming tools and implements and some of his livestock; that his banking was conducted at frequent and regular intervals in Caldwell Parish; that he sought to exercise the voting franchise only in his native precinct; and that he returned each month, for a few days, to the place he knew and termed as home.

The fact that he rented his farm, with the home thereon, to Albert Kelly, and the further fact that he sold two cows, two mules and a few hogs, are of no real consequence. The livestock can be easily replaced on the liquidating of his indebtedness and his resumption of farming operations; while the rental agreement affected his realty for no indefinite term, but for a period of only one year.

Being a person of limited means, comparable with the railroad conductor in the Caufield case, he was not legally bound to maintain his farming property as a separate domestic establishment to be occupied solely by himself. In fact, it is obvious that his economic condition did not permit that arrangement. The place belonging to and lived in by his father, to whose support he regularly contributed, was available to him at all times. This was adjacent to his home, and it was sufficient to constitute a fixed place of abode such as is required to be kept for the purpose of retaining residence.

The absence of Steele from Ward 5 of Caldwell Parish was, in our opinion, only temporary in nature, occasioned by considerations of duty and business and not by choice; and, in contemplation of law his status was that of an absent actual bona fide resident.

Accordingly, the judgment of the district court is reversed and set aside, and respondent Steele is hereby recognized as the lawful member of the Caldwell Parish School Board from Ward 5; and it is now ordered that the demands of relator be rejected and his suit dismissed. Relator shall pay the costs of both courts.