JASPER E. JONES, Judge.
The plaintiff, James Q. Wellborn, appeals a judgment rejecting his demand that Donald E. Jones, defendant, who had qualified for mayor of Bossier City on February 3, 1984, be disqualified as a candidate for the mayor of Bossier City. The plaintiff contended Jones was not qualified because Jones allegedly had not “actually resided [in Bossier City] two consecutive years immediately preceding the date of the general election” as required by Chapter 4, Section 4.03 of the Bossier City Home Rule Charter.
The trial court held that Jones met the residence requirement of the Home Rule Charter and rejected plaintiff’s demand that he be disqualified. We affirm.
The trial court assigned excellent written reasons for its decision wherein it concisely but in full detail made the following factual determinations which are fully supported by the evidence.
“Donald E. Jones was born and grew up in Bossier City and attended public schools in Bossier City until he. graduated from high school. He then attended Louisiana Tech University and worked summers in the family business corporation, Jones’ Brothers Company, Inc., located in Bossier City, Louisiana. After graduation, he was employed by the company in Bossier City, and at the time he filed for office, he was a vice-president of the company.
From December 1977 to July 1982, defendant lived with his family at 504 Yale Place in Bossier City. In June 1982, he was elected President of the United States Jaycees, and that organization provided a house for him and his family in Tulsa, Oklahoma. In early July defendant went to Tulsa, and his family followed later in the month, taking their personal items and clothing, along with a sofa, television and a chair. They moved their furniture from 504 Yale Place and transported some of it to the home of defendant’s parents at 425 *789 Waller Street in Bossier City. The remainder of the furniture was stored commercially in Bossier City. The home at 504 Yale Place was then leased on a month-to-month lease to two different individuals during' the term of defendant’s presidency.
The defendant and his family occupied the house in Tulsa during the year until late June, 1983, when they returned to Bossier City. Defendant and his family then divided their time between 425 Waller Street and his parent’s camp on Lake Bis-teneau, outside the city limits of Bossier City. During this time, defendant and his wife looked for a house in Bossier City to purchase, and eventually made an offer for a house on July 27, 1983. On July 29, defendant signed a purchase agreement for a home, and the same was closed on September 23, 1983. Mayor Anding died September 11, 1983, causing the vacancy for which defendant is a candidate for office.
During the year while defendant and his family occupied the house in Tulsa, defendant traveled extensively, being away overnight approximately three hundred nights during the year, and on one occasion he and his wife spent approximately one month overseas. During that month, his school-aged son attended school in Bossier City. The remainder of the year, the child attended school in Tulsa. Defendant returned to Bossier City approximately nine or ten times during the year.
In Tulsa, defendant opened a bank savings account and was listed in the city directory and the telephone book. He had no checking account in Tulsa banks, he did not register to vote, and he opened no Tulsa charge accounts.
In Bossier City at 425 Waller Street, the home of his parents, defendant had access to a portion of his parents’ home at all times. The area was two bedrooms, a bath, living room, dining room, and defendant and his family shared a kitchen with his parents. Defendant and his family had separate access and separate keys, and there was even separate air conditioning and heating in the area provided for defendant. He and his family could come and go as they pleased without notice or asking permission of his parents or anyone else. There is no doubt in the mind of the Court that at all times the defendant intended to reside in Bossier City and intended to return to Bossier City as soon as the term of his office was ended.
During the year -of his presidency defendant had many other contacts with Bossier City. He remained vice-president of the family business and was paid the same salary, in addition to his salary paid by the United States Jaycees. He made some business decisions, as shown by some documents signed by him, which were filed in evidence. He retained both savings and checking accounts for himself and his wife, and he retained savings accounts for his children in Bossier City banks. He paid his personal bills from Bossier City checking accounts and used his Bossier City address on charge accounts, driver’s license, income tax returns, and in public appearances for United States Jaycees. He filed Louisiana resident income tax returns and Oklahoma non-resident income tax returns for the period in question during his presidency. Defendant had sufficient personal belongings and clothes at the residence on 425 Waller Street, so that he did not have to bring additional clothing when he came. He and his wife retained local memberships in the Jaycees and Jaycee Jaynes organizations, and November 22, 1982, was proclaimed as Don E. Jones Day in Bossier City. Defendant retained his voter registration and church membership in Bossier City and contributed to his local church during the year. He also did a television commercial in December, 1982, for a local bank urging the viewers to bring their money, to Bossier City banks. He made numerous statements to friends and associates concerning his intention to return to Bossier City.
When he returned to Bossier City in June, 1983, he continued his living arrangements at the home of his parents and spent equal time there and at the camp house of his parents on Lake Bisteneau. All the while, he and his wife were looking for a *790 house, since they had decided to sell their house at 504 Yale Place.”
The appellant contends that Jones, who had been a resident of Bossier City for many years, lost his status as such in June of 1982 when he and his family moved from their owned family home at 504 Yale Place and did not reacquire the status as a resident of Bossier City until Jones bought a new home in Bossier City on September 23, 1983.
A person who is temporarily absent from the place he intends as his place of residence does not lose his status as a resident by virtue of his temporary absence if he maintains a place where he has a right to return at will without making any prior arrangements. Hall v. Godchaux, 149 La. 733, 90 So. 145 (1921).
In order to be an actual bona fide resident of a city a person is not required to remain continuously in that city and his status as a resident of it is not affected by temporary absence required by business or pleasure. State v. Steele, 200 So. 496 (La.App. 2d Cir.1941).
The factors to be considered in determining where a person resides includes his expression of intent to return or select a place to be his residence made at unsuspi-cious times combined with his conduct and activities which corroborate his expressed intent. Caufield v. Cravens, 138 La. 283, 70 So. 226 (1915); State v. Steele, supra; Robinson v. Atkins, 275 So.2d 444 (La.App. 2d Cir.1973).
After Jones moved from his family home at 504 Yale he and his family temporarily occupied a home in Tulsa, Oklahoma from time to time during the period between June 30, 1982 and June 30, 1983. During this period Jones had the exclusive use of two bedrooms, a bath room, a living room ánd dining room in his parent’s home in Bossier City. He also had the right to use the kitchen in his parent’s home. He and his wife had a key to a private entrance to these living facilities and had the right to occupy them without making any prior arrangement. Jones testified that he spent about as much time in Bossier City during this period as he did in Tulsa. He spent most of this year visiting various Jaycee groups throughout the United States and he and his wife spent one month during this period out of the country.
Jones had always expressed the intent to return permanently to Bossier City at the expiration of his one year term as President of the United States Jaycees. Jones’ expressed intent was clearly corroborated by his frequent visits to Bossier City and by actually retaining his Bossier City job, voting registration, business, religious and social connections.
Jones’ use of his father’s camp on Lake Bisteneau from time to time during the summer of 1983 after his return from Tulsa did not change his status as a resident of Bossier City because he continued to use the living quarters provided him in his father’s home in Bossier City.
Jones’ temporary absence from Bossier City did not affect his status as a resident of Bossier City which he had possessed for many years before he qualified as a candidate for mayor. The judgment is AFFIRMED.