**2017 UT App 224**

## THE UTAH COURT OF APPEALS

STATE OF UTAH,
Appellee,
*v.*
ROGER WAYNE SIMMONS,
Appellant.

Opinion
No. 20150426-CA
Filed November 30, 2017

Third District Court, Salt Lake Department
The Honorable Mark S. Kouris
No. 121904077

Samuel P. Newton, Attorney for Appellant

Sean D. Reyes and Jeanne B. Inouye, Attorneys
for Appellee

JUDGE DIANA HAGEN authored this Opinion, in which JUDGES
GREGORY K. ORME and KATE A. TOOMEY concurred.

HAGEN, Judge:

¶1 Roger Wayne Simmons was arrested on suspicion of drunk driving at the Salt Lake City International Airport. When Simmons refused to submit voluntarily to any sobriety tests, police obtained a warrant to collect a blood sample. Simmons became agitated and combative, and the officers executing the warrant restrained him while they drew his blood. Police never handed a copy of the warrant to Simmons but instead left a copy with his belongings. Simmons moved to suppress the results of the blood test, claiming that the warrant was invalid and was not properly served prior to the search. The district court denied the motion, and Simmons appeals. We affirm.

BACKGROUND

¶2 Around two o'clock in the morning, Officer Kenny Brown of the Salt Lake City International Airport Police Department noticed Simmons driving a car significantly below the speed limit, straddling two lanes, and drifting into the park-and-wait lot. As he watched, Simmons drove past a stop sign, turned into a commercial vehicle lane, and continued the wrong way down a one-way road. Officer Brown activated his overhead lights, but Simmons continued driving until his car hit the concrete barrier of a parking stall.

¶3 As Officer Brown approached the car, he noticed Simmons "moving very quickly, as if he was anxiously trying to remove the keys from the ignition." When Officer Brown knocked on the window, Simmons stared straight ahead and did not respond. Officer Brown opened the door and smelled a strong odor of alcohol coming from inside the car. Eventually, Simmons slowly turned to the officer, smiled, and raised his keys in the air, waving them back and forth. Simmons apologized for driving so fast but explained that he had a "covert message" to deliver to China. Simmons's pants were unzipped, his eyes were bloodshot, and he appeared confused. Officer Brown called for backup.

¶4 When additional officers arrived on the scene, Officer Brown asked Simmons to step out of the vehicle to perform field sobriety tests. Simmons refused all tests and claimed that "he ha[d] not consumed any alcohol, and that there was no alcohol in the vehicle." The officers requested identification from Simmons, who "stated that his license was somewhere in the vehicle." While retrieving Simmons's driver license from the car, Officer Brown noticed a cup in the center console, smelled its contents, and recognized that it contained an alcoholic beverage.

¶5 Simmons was arrested and taken to the airport police station. Because Simmons would not comply with police safety

instructions, he remained handcuffed in the holding cell while police sought a warrant to obtain a blood sample.

¶6 Officer Brown contacted Sergeant Ryan Albrecht, a member of the investigations team, and requested his assistance with a search warrant application. Sergeant Albrecht prepared and signed the warrant affidavit, which recited the relevant facts. Throughout the affidavit, Sergeant Albrecht indicated that it was Officer Brown who had witnessed the facts supporting probable cause.

¶7 After Sergeant Albrecht obtained the warrant, Detective Jeff Payne,[1] a certified phlebotomist, came to the airport police station to collect the blood sample. Both Detective Payne and Officer Brown informed Simmons that they had a search warrant to draw his blood. Simmons became "very agitated" and "made it clear that he was not willingly going to cooperate with the blood draw." Simmons became confrontational, shouting and spitting at the officers, and they had to restrain him on the ground with a spit hood over his head. After Detective Payne completed the blood draw, another officer placed a copy of the warrant in Simmons's bag along with his personal effects. The district court found no evidence that Simmons was handed a copy of the warrant.

¶8 The test revealed that Simmons had a blood alcohol concentration of ".21 grams per 100 milliliter[s]," more than twice the legal limit. *See* Utah Code Ann. § 41-6a-502(1) (LexisNexis 2014). The State charged Simmons with multiple

---

1. Simmons submitted a letter to this court, purportedly under rule 24(j) of the Utah Rules of Appellate Procedure, referencing an unrelated incident involving Detective Payne. That information is outside the record on appeal, and we do not consider it in reaching our decision.

offenses, including driving under the influence of alcohol with prior convictions, a third degree felony.

¶9    Prior to trial, Simmons moved to suppress the results of the blood test, arguing that the warrant (1) was invalid because the affiant did not have personal knowledge of the facts giving rise to probable cause, and (2) was not properly served on him prior to the blood draw. As to the first issue, the district court found that the affidavit "specifically indicates throughout that Officer Brown was the officer involved" and "does not state that Sergeant Albrecht himself witnessed the events." Because officers are free to rely on hearsay from other officers, the court ruled that the warrant was supported by probable cause. As to the second issue, the court determined that failure to present a warrant before a search takes place does not rise to the level of a Fourth Amendment violation requiring suppression. In the alternative, the court ruled that, "given [Simmons's] disruptive behavior during the blood draw, placing a copy of the warrant with his belongings constituted adequate service." Accordingly, the district court denied Simmons's motion to suppress.

¶10   At trial, Simmons was convicted of two misdemeanors as well as the felony offense of driving under the influence of alcohol with prior convictions. He now appeals, arguing that the results of his blood test should have been suppressed.

ISSUES AND STANDARD OF REVIEW

¶11   Simmons raises two grounds for reversal on appeal. First, he argues that the district court erred in concluding that the warrant was valid where the officer-affiant had no personal knowledge of the facts giving rise to probable cause. Second, Simmons contends that the officers violated rule 40(d) of the Utah Rules of Criminal Procedure when they failed to personally serve the warrant prior to the search and that this alleged violation should result in suppression.

¶12  "We review a trial court's decision to grant or deny a motion to suppress for an alleged Fourth Amendment violation as a mixed question of law and fact." *State v. Fuller*, 2014 UT 29, ¶ 17, 332 P.3d 937. "While the court's factual findings are reviewed for clear error, its legal conclusions are reviewed for correctness, including its application of law to the facts of the case." *Id.*

ANALYSIS

I. Validity of the Warrant

¶13  Simmons argues that the warrant authorizing the blood draw was invalid because "the affirming officer had no personal knowledge of the facts being sworn to and failed to inform the court that his knowledge was based on another officer's observations." This argument fails for two reasons. First, in seeking a warrant, an officer-affiant may rely on the observations of fellow officers. Second, the affidavit in this case made it clear that Officer Brown, not the affiant, personally observed the facts giving rise to probable cause.

¶14  As an initial matter, it is well established that "[o]bservations of fellow officers of the Government engaged in a common investigation are plainly a reliable basis for a warrant applied for by one of their number." *United States v. Ventresca*, 380 U.S. 102, 111 (1965). Simmons claims that, where the facts are not based on the affiant's personal knowledge, the affidavit must establish the veracity and reliability of the person supplying the information. While such a showing may be necessary when relying on certain nonpolice sources, "lower courts have consistently held that another law enforcement officer is a reliable source and that consequently no special showing of reliability need be made as a part of the probable cause determination." 2 Wayne LaFave et al., *Search & Seizure* § 3.5(a) (5th ed. 2009) (collecting cases).

¶15 Second, Sergeant Albrecht fully disclosed that the facts described in the warrant application were based on another officer's observations. Simmons argues that this case is similar to *State v. Nielsen*, 727 P.2d 188 (Utah 1986), where the officer-affiant misrepresented that he had been told facts by a confidential informant he considered reliable when, in truth, he had never personally interacted with the informant. *Id.* at 190.[2] Unlike the misleading affidavit in *Nielsen*, the affidavit in this case never suggested that Sergeant Albrecht personally observed Simmons's behavior, smelled the odor of alcohol, or saw the open container in the car. To the contrary, the affidavit prefaces each of these factual statements by indicating that they were "noticed" or "witnessed" by Officer Brown. The issuing judge was therefore fully informed that Officer Brown was the firsthand source of the information.

¶16 Finally, Simmons argues that, even if the warrant affidavit satisfied the probable cause requirement of the federal constitution, "Utah's constitution protects against an officer's failure to state in a warrant application that he does not have personal knowledge of the facts he attests to be true." Because Simmons did not raise this state constitutional claim to the trial court, he has not preserved it for appeal. *See State v. Worwood*, 2007 UT 47, ¶ 18, 164 P.3d 397, 405; *see also State v. Fahina*, 2017 UT App 111, ¶ 21, 400 P.3d 1177 ("An issue is preserved for appeal when it has been presented to the district court in such a

---

2. In *Nielsen*, the supreme court determined that the "officer's misstatements were intentional and in bad faith," but ultimately concluded that the misstatements "did not materially affect the magistrate's finding of probable cause." *State v. Nielsen*, 727 P.2d 188, 189 (Utah 1986). In this case, because Sergeant Albrecht disclosed that he was recounting Officer Brown's observations, we do not consider whether failure to do so would have rendered the warrant invalid.

way that the court has an opportunity to rule on [it].") (alteration in original) (citation and internal quotation marks omitted). Simmons has not established any of the three recognized exceptions to preservation—plain error, ineffective assistance of counsel, or exceptional circumstances—that would persuade us to reach this unpreserved issue. *See State v. Johnson*, 2017 UT 76, ¶ 19.

## II. Service of the Warrant

¶17    Simmons next argues that the evidence obtained from the blood draw should be suppressed because the executing officers failed to serve the warrant as required by rule 40(d) of the Utah Rules of Criminal Procedure. Rule 40(d) provides that "[a] copy of the search warrant shall be served in a readable form upon the person or place to be searched." Although there are no Utah cases interpreting the meaning of this provision, Simmons argues that the syntax of subsection (d) suggests that officers must hand the subject a copy of the warrant prior to beginning the search.

¶18    The district court denied the motion to suppress on two alternative grounds. First, the court ruled that a violation of rule 40(d) would not rise to the level of a Fourth Amendment violation requiring suppression of evidence. Second, it ruled that, "given [Simmons's] disruptive behavior during the blood draw, placing a copy of the warrant with his belongings constituted adequate service."

¶19    In briefing this issue on appeal, Simmons argues only that the exclusionary rule should apply to a violation of rule 40(d). He does not address the court's alternative conclusion that placing the warrant with Simmons's belongings was adequate service under the circumstances. We "will not reverse a ruling of the district court that rests on independent alternative grounds where the appellant challenges only one of those grounds." *Gilbert v. Utah State Bar*, 2016 UT 32, ¶ 24, 379 P.3d 1247; *see also*

*State v. Roberts*, 2015 UT 24, ¶ 38, 345 P.3d 1226. Because Simmons has not shown that the district court erred in finding service was adequate under rule 40(d), we affirm on that basis.

CONCLUSION

¶20    The district court properly denied the motion to suppress because the warrant was supported by probable cause. Because Simmons has not challenged the district court's conclusion that the warrant was adequately served under the circumstances, we do not reach the question of whether suppression would be an appropriate remedy for a violation of rule 40(d).

¶21    Affirmed.

_____