2018 UT App 51

## THE UTAH COURT OF APPEALS

STATE OF UTAH,
Appellee,
*v.*
TY WILLIAM MCLEOD,
Appellant.

Opinion
No. 20151060-CA
Filed March 29, 2018

Third District Court, Salt Lake Department
The Honorable James T. Blanch
No. 141902943

Alexandra S. McCallum, Attorney for Appellant

Sean D. Reyes and Karen A. Klucznik, Attorneys
for Appellee

JUDGE DIANA HAGEN authored this Opinion, in which JUDGES
GREGORY K. ORME and JILL M. POHLMAN concurred.

HAGEN, Judge:

¶1    Ty William McLeod appeals the district court's denial of his motion to suppress drug and paraphernalia possession evidence discovered during a traffic stop. The district court determined that the officers did not have reasonable suspicion to extend the detention. However, it denied the motion to suppress because the length of McLeod's detention did not exceed the amount of time reasonably necessary to complete an ordinary traffic stop. On appeal, the State concedes that the "denial of the suppression motion appears to have been based on an incorrect understanding of the law" but urges us to affirm on the alternative ground that the officers had reasonable suspicion to prolong the stop. We agree with the district court that the officer lacked reasonable suspicion. As a result, we decline to affirm on

the alternative ground, and we reverse the district court's denial of the motion to suppress.

BACKGROUND[1]

¶2     A police officer was patrolling 200 South 500 West in Salt Lake City when he noticed a vehicle parked in the median of the street. The officer watched as McLeod exited the vehicle and jaywalked across the street. McLeod approached three people, who pointed out that the officer was nearby. McLeod then walked around the corner, out of the officer's sight. The officer waited for McLeod to return to his vehicle.

¶3     When McLeod returned, he got into his vehicle and pulled away from the median without signaling.[2] At that point, the officer initiated a traffic stop. The officer approached McLeod's vehicle and requested his driver license, proof of insurance, and vehicle registration. When McLeod was unable to produce those documents, the officer asked for his name and other identifying information.

¶4     The officer returned to his patrol car to complete a records check while a backup officer, who had arrived on the scene, watched McLeod. During the records check, McLeod continued

---

1. "In reviewing the [district] court's ruling on a motion to suppress evidence, we recite the relevant facts in the light most favorable to the [district] court's findings." *State v. Navarro*, 2017 UT App 102, ¶ 2 n.1, 400 P.3d 1120 (citation and internal quotation marks omitted).

2. "A person may not turn a vehicle or move right or left on a roadway or change lanes until . . . an appropriate signal has been given . . . ." Utah Code Ann. § 41-6a-804(1)(a) (LexisNexis Supp. 2017).

"moving around quite a bit in his front seat." The backup officer told McLeod to stop moving around, and he complied.

¶5     The records check confirmed that McLeod had a valid driver license and that he did not have any outstanding warrants. The officer later testified that nothing in McLeod's record "raised concerns of violence" or suggested that the officer "should detain him further on . . . any other matters."

¶6     The officer also acknowledged that, "at that point, it was either write the citation or give him a warning [for the traffic violation]." But the officer did not write McLeod a citation, give him a warning for any offense, or tell him that he was free to leave. Instead, the officer returned to McLeod's vehicle and asked whether "he had anything illegal in the car." When McLeod said "No," the officer asked if he could search the vehicle, and McLeod responded, "Sure."

¶7     As he prepared to step out of the car, McLeod reached underneath a pile of clothes on the passenger seat. Concerned that McLeod was reaching for a weapon, the officers ordered McLeod out of the vehicle and frisked him, which confirmed that McLeod did not have any weapons on his person.

¶8     The officer then asked McLeod a second time whether there was anything illegal in the vehicle. This time, McLeod admitted that he had a syringe in a shoe inside the car. Approximately ten minutes had elapsed from the beginning of the traffic stop to the time that McLeod indicated that he had a syringe.

¶9     During the ensuing search of McLeod's vehicle, the officer discovered a heroin-filled syringe and a black twist[3] in the shoe

_____

3. According to the officer, certain drugs are typically packaged in a twist, which is a pinky-sized bag that has been twisted and

(continued…)

and two more black twists in the center console. The officer believed that the twists contained heroin because, based on his training and experience, that was "the way [heroin] was packaged."

¶10    McLeod was arrested and subsequently charged with possession or use of a controlled substance, a third degree felony, and possession of drug paraphernalia, a class B misdemeanor. Before trial, McLeod moved to suppress the evidence, contending that the officer had violated his rights under the Fourth Amendment to the United States Constitution. Specifically, McLeod argued that because "there [was] no reasonable basis to extend the stop[,] . . . [the officer's] request to search the vehicle constituted an illegal detention and the evidence should be suppressed."

¶11    In denying the motion to suppress, the district court rejected the State's argument that McLeod's "furtive movements" and "suspicious acts" prior to the traffic stop constituted reasonable suspicion to extend the detention. Instead, the court concluded that the officer "did not unconstitutionally extend the scope of the traffic stop," because his "activities that were not directed toward the traffic investigation took substantially less time than would have been required to complete the traffic investigation and issue a citation."

¶12    McLeod pled guilty to possession of a controlled substance, a class A misdemeanor, preserving his right to appeal the district court's denial of his motion to suppress. *See* Utah R. App. P. 11(j). McLeod timely appeals.

---

(…continued)
then melted on the end to prevent breaking. The color of the twist varies based on the type of drug it contains.

ISSUE AND STANDARD OF REVIEW

¶13    McLeod contends that the district court erred in denying his motion to suppress because the officer extended the scope and duration of the traffic stop without reasonable suspicion to investigate unrelated criminal activity.

¶14    "We review a [district] court's decision to grant or deny a motion to suppress for an alleged Fourth Amendment violation as a mixed question of law and fact." *State v. Simmons*, 2017 UT App 224, ¶ 12, 409 P.3d 129 (citation and internal quotation marks omitted). "While the court's factual findings are reviewed for clear error, its legal conclusions are reviewed for correctness, including its application of law to the facts of the case." *Id.* (citation and internal quotation marks omitted).

ANALYSIS

¶15    The Fourth Amendment to the United States Constitution does not forbid all searches and seizures, "but [only] unreasonable searches and seizures." *Terry v. Ohio*, 392 U.S. 1, 9 (1968) (citation and internal quotation marks omitted). The proscription against unreasonable searches and seizures extends to traffic stops "even though the purpose of the stop is limited and the resulting detention quite brief." *Delaware v. Prouse*, 440 U.S. 648, 653 (1979).

¶16    "To decide whether police conduct during a traffic stop is reasonable, we consider whether the stop was (1) 'justified at its inception' and (2) carried out in a manner 'reasonably related in scope to the circumstances [that] justified the interference in the first place.'" *State v. Martinez*, 2017 UT 43, ¶ 12 (alteration in original) (quoting *United States v. Sharpe*, 470 U.S. 675, 682 (1985)).

¶17    Here, it is undisputed that the stop was justified at its inception because the officer had probable cause to stop McLeod for failing to signal before turning. But a traffic stop that is lawful at its inception "can become unlawful if it is prolonged beyond the time reasonably required to complete [the stop's] mission," including the time necessary "to address the traffic violation that warranted the stop and attend to related safety concerns." *Rodriguez v. United States*, 135 S. Ct. 1609, 1614–15 (2015) (citations and internal quotation marks omitted). "If, during the scope of the traffic stop, the officer forms new reasonable articulable suspicion of criminal activity, the officer may also expediently investigate his new suspicion." *State v. Baker*, 2010 UT 18, ¶ 13, 229 P.3d 650. But "without additional reasonable suspicion, the officer must allow the seized person to depart once the purpose of the stop has concluded." *Id.*

¶18    On appeal, the State concedes that the officer prolonged the detention beyond the time necessary to complete the purpose of the traffic stop in order to investigate McLeod's involvement in unrelated drug activity. In denying the motion to suppress, the district court determined that the officer did not have reasonable suspicion of other criminal activity, but it ruled that reasonable suspicion was not required because the officer did not detain McLeod longer than the time reasonably necessary to complete an ordinary traffic stop. The State concedes that it cannot argue for affirmance on this basis given the United States Supreme Court's holding in *Rodriguez*.

¶19    In *Rodriguez*, the Supreme Court determined that, although officers may ask questions unrelated to the purpose of the traffic stop without offending the Fourth Amendment "so long as [unrelated] inquiries do not measurably extend the duration of the stop," they cannot earn "bonus time to pursue an unrelated criminal investigation" by expeditiously completing all traffic-related tasks. 135 S. Ct. at 1615–16. "If an officer can complete traffic-based inquiries expeditiously, then that is the

amount of time reasonably required to complete [the stop's] mission." *Id.* (alteration in original) (citation and internal quotation marks omitted). A traffic stop prolonged beyond that point is unlawful unless it is supported by reasonable suspicion of other criminal activity. *See Baker*, 2010 UT 18, ¶ 13.

¶20    The State acknowledges that the officer had completed the purpose of the traffic stop when he returned to McLeod's vehicle following the records check. Accordingly, reasonable suspicion was required to detain McLeod further and inquire as to whether he had anything illegal in his car.

¶21    The State argues that the officer had reasonable suspicion to prolong the traffic stop and urges us to affirm the denial of the motion to suppress on that alternative basis. Even though the district court determined that the officer lacked reasonable suspicion, we may affirm "on any legal ground or theory apparent on the record." *Bailey v. Bayles*, 2002 UT 58, ¶ 10, 52 P.3d 1158 (citation and internal quotation marks omitted). However, we are "limited to the findings of fact made by the trial court and may not find new facts or reweigh the evidence in light of the new legal theory or alternate ground." *Id.* ¶ 20.

¶22    The State argues that McLeod's "prior suspicious conduct in a high-drug-crime area, combined with his conduct during the traffic stop, constituted reasonable suspicion." To support its argument, the State points to the following circumstances: (1) McLeod's "conduct approaching three separate people while there" and his "prompt departure upon learning that police were nearby," (2) McLeod's "furtive movements during the traffic stop," and (3) McLeod's "presence in an area known to be high in drug-dealing." As noted *infra* ¶ 11, the district court concluded that these facts did not give rise to reasonable suspicion to investigate any criminal activity beyond the traffic violation. Based on the court's factual findings, we agree that the totality of the circumstances did not provide the officer with a

particularized and objective basis to believe McLeod was involved in criminal activity.

¶23 Reasonable suspicion is an elusive concept that is "not readily, or even usefully, reduced to a neat set of legal rules." *Ornelas v. United States*, 517 U.S. 690, 695–96 (1996) (citation and internal quotation marks omitted). To determine whether reasonable suspicion exists, we must examine the "totality of the circumstances" to establish "whether the detaining officer [had] a particularized and objective basis for suspecting legal wrongdoing." *United States v. Arvizu*, 534 U.S. 266, 273 (2002) (citation and internal quotation marks omitted); *see also State v. Markland*, 2005 UT 26, ¶ 11, 112 P.3d 507 (stating that "[c]ourts must view the articulable facts in their totality and avoid the temptation to divide the facts and evaluate them in isolation" (alteration in original) (citation and internal quotation marks omitted)). Officers may "draw on their own experience and specialized training" to make inferences that "might well elude an untrained person." *Arvizu*, 534 U.S. at 273 (citation and internal quotation marks omitted). While reasonable suspicion requires officers to articulate more than a "hunch," they are not required to "rule out the possibility of innocent conduct." *State v. Richards*, 2009 UT App 397, ¶ 9, 224 P.3d 733 (citation and internal quotation marks omitted).

¶24 First, the State argues that McLeod acted suspiciously by approaching three people on a sidewalk and then walking around the corner when at least one person pointed to the officer. "[N]ervous, evasive behavior is a pertinent factor in determining reasonable suspicion." *Illinois v. Wardlow*, 528 U.S. 119, 124 (2000). But the district court made no factual finding characterizing McLeod's conduct as evasive and the limited evidence presented does not compel such an inference. There is no suggestion that McLeod engaged in headlong flight, "the consummate act of evasion," *id.*, or even that he abruptly changed course in response to the presence of the officer. Based

on the testimony, McLeod's conduct in walking around the corner could just as easily be characterized as going about one's business. *See id.* at 125. Without more, we cannot give this factor any significant weight in the reasonable suspicion calculus.

¶25    Second, the State relies on what it characterizes as McLeod's "furtive gestures" during the traffic stop. Furtive gestures may be a relevant factor in the reasonable suspicion analysis if they are "coupled with prior reliable information indicating possible criminal conduct." *State v. Schlosser*, 774 P.2d 1132, 1138 n.5 (Utah 1989). But the mere fact that McLeod was "moving all around" while the officer conducted a records check does not weigh heavily in favor of reasonable suspicion. While the district court referred to the State's characterization of McLeod's movements as "furtive," it did not make any factual finding that McLeod's actions were suspicious. *See Angel Inv'rs, LLC v. Garrity*, 2009 UT 40, ¶ 39, 216 P.3d 944 ("Stating the [party's] assertion without ruling on the validity of the assertion does not constitute a finding of fact."). In his testimony, the officer acknowledged it is not unusual for drivers who could not produce a license and registration to continue looking for those items. The fact that the district court specifically considered the alleged furtive movements and still concluded that there was no reasonable suspicion to prolong the stop persuades us that McLeod's behavior was not inherently suspicious or strongly indicative of criminal behavior.

¶26    Finally, we recognize that a location's reputation for being a "high crime area" is a relevant factor for courts to consider as part of the reasonable suspicion analysis. *See Wardlow*, 528 U.S. at 124. While the district court did not make specific findings of fact regarding the character of the neighborhood in this case,[4] the

---

4. At the hearing on the motion to suppress, the district court received evidence on both this case and a related case we also

(continued…)

officer testified that 200 South 500 West is a high-crime area known for drug trafficking and aggravated crimes. This undisputed testimony weighs in favor of the State's argument, but "[a]n individual's presence in an area of expected criminal activity, standing alone, is not enough to support a reasonable, particularized suspicion that the person is committing a crime." *Id.*

¶27 Taken together, the totality of the circumstances were insufficient for the officer to form a particularized and objective basis to suspect that McLeod was involved in criminal activity beyond the observed traffic violation. Because the purpose of the stop was completed, McLeod's further detention without reasonable suspicion of additional criminal activity violated the Fourth Amendment thereby tainting McLeod's consent to search the vehicle. Accordingly, we decline to affirm McLeod's conviction on the State's proposed alternative ground.

CONCLUSION

¶28 We accept the State's concessions that the officer prolonged McLeod's detention beyond the time necessary to complete the traffic stop and that reasonable suspicion was required to further detain him and ask questions unrelated to the purpose of the stop. While we disagree with the district court that the traffic stop was not unlawfully extended, we do agree with the district court that the officer lacked reasonable suspicion to believe McLeod was engaged in other criminal activity. As a result, we conclude that McLeod's Fourth

---

(…continued)
decide today, *State v. McLeod*, 2018 UT App 52. In that case, the district court made a finding that this area—the so-called Rio Grande district on Salt Lake City's west side—is a high-crime area.

Amendment rights were violated and that he is entitled to suppression of the evidence discovered during the traffic stop.

¶29  We therefore reverse and remand for further proceedings consistent with this opinion.

————————