2017 UT App 205

## THE UTAH COURT OF APPEALS

STATE OF UTAH,
Appellee,
*v.*
TIMOTHY JOSEPH ADAMS,
Appellant.

Opinion
No. 20150565-CA
Filed November 9, 2017

Sixth District Court, Kanab Department
The Honorable Marvin D. Bagley
No. 131600036

Dale W. Sessions, Attorney for Appellant

Sean D. Reyes and Lindsey L. Wheeler, Attorneys
for Appellee

JUDGE GREGORY K. ORME authored this Opinion, in which JUDGES
KATE A. TOOMEY and JILL M. POHLMAN concurred.

ORME, Judge:

¶1      Timothy Joseph Adams (Defendant) appeals his convictions for producing and intending to distribute a controlled substance, arguing that the district court erred when it denied his motion to suppress evidence discovered during a police search of his home. Because we agree with the district court that the challenged search did not violate Defendant's rights under the Fourth Amendment to the United States Constitution, we affirm.

¶2      On March 2, 2013, Big Water Deputy Rob Johnson responded to a call from Defendant's elderly mother, who was very concerned about her son. Defendant, who lived alone in Big Water, had not been in contact with her in several days,

although typically they would speak on a near-daily basis. At sixty-five, Defendant was not in good health, and his mother feared the worst. Having responded to many similar calls involving older individuals in the past, Deputy Johnson did, too.

¶3     Deputy Johnson departed immediately to conduct a "welfare check" at Defendant's home. Upon arriving, he saw that a light was on inside, but no one answered when he knocked on the door and yelled into the home. Deputy Johnson saw no vehicles on the property, but he did find signs that someone had recently been repairing leaky pipes underneath the home. The area around the entrance to the crawl space was moist, and a light in the crawl space was being powered by an extension cord that ran up through an open window and into the living room. He also saw that some tools had been left near the air conditioning unit on top of the roof, and near them a ladder had been left leaning up against the home. While all of this might have suggested that Defendant had left to buy a part or borrow a tool mid-project, Defendant's neighbors informed Deputy Johnson that they had not seen Defendant for two or three days.

¶4     Deputy Johnson called Defendant's mother to apprise her of the situation. After reiterating her concerns for her son's health and safety, she implored Deputy Johnson to "use whatever means necessary" to ensure that her son was alright. He complied and entered Defendant's living room through the open window.

¶5     Upon entering Defendant's house, Deputy Johnson saw a grow light and several plants, all in various stages of cultivation. He recognized the plants to be marijuana. After searching every area within the residence where he believed he might find Defendant, Deputy Johnson concluded that Defendant was not at home. After photographing the plants with his cell phone, Deputy Johnson left the residence.

¶6 After obtaining a search warrant, Deputy Johnson returned to Defendant's home accompanied by Big Water's Marshal. When they arrived, Defendant was loading marijuana plants into his pickup truck and texting on his cell phone. All in all, the officers found six marijuana plants, in addition to some potting soil, industrial grow lights, rolling papers, and a rifle. Based on what they found while executing this warrant, the officers obtained a second warrant to seize Defendant's rifle and cell phone.

¶7 Defendant was later charged with production of a controlled substance and possession of a controlled substance with intent to distribute, both second degree felonies. He was also charged with three less serious offenses.

¶8 Defendant moved to suppress the State's evidence against him on the grounds that Deputy Johnson's initial search of his home violated his Fourth Amendment rights and that all evidence obtained as a result of the first and second warrants was therefore fruit of an unlawful search. After extensive briefing and an evidentiary hearing, the district court denied Defendant's motion and issued a memorandum decision setting forth its findings of fact and conclusions of law. The court determined that, viewing the circumstances "objectively, and as a whole, it was reasonable for Deputy Johnson to conclude there was an emergency and that Defendant was in immediate need of life-saving assistance." The court concluded that the deputy's warrantless entry into Defendant's home was therefore "reasonable and lawful under the circumstances."

¶9 Ultimately, Defendant agreed to enter guilty pleas on his two second degree felony charges in exchange for the State's dismissal of the three remaining charges. As a part of his plea agreement, however, Defendant reserved the right to appeal the district court's ruling on his motion to suppress. *See generally*

Utah R. Crim. P. 11(j); *State v. Sery*, 758 P.2d 935, 939 (Utah Ct. App. 1988). That appeal is now before us.

¶10    Defendant contends that the district court erred in denying his motion to suppress. Specifically, Defendant argues that the district court incorrectly held that Deputy Johnson's initial search was permissible under the "emergency aid" exception to the Fourth Amendment's warrant requirement.[1]

¶11    "We review a trial court's decision to grant or deny a motion to suppress for an alleged Fourth Amendment violation as a mixed question of law and fact." *State v. Fuller*, 2014 UT 29, ¶ 17, 332 P.3d 937. "While the court's factual findings are reviewed for clear error, its legal conclusions are reviewed for correctness, including its application of law to the facts of the case." *Id.*

¶12    The Fourth Amendment to the United States Constitution guarantees "[t]he right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures." U.S. Const. amend. IV.[2] "Physical entry

---

1. The parties apparently agree that if the search was illegal, then the exclusionary rule would apply, and all evidence obtained as a result of the first and second warrants would properly be suppressed.

2. There appears to have been argument before the district court regarding whether our state constitution provides greater protections against searches of private dwellings than does its federal counterpart. But on appeal, Defendant argues only that Deputy Johnson's initial search violated his rights under the Fourth Amendment to the United States Constitution. We therefore have no occasion to interpret the parallel provision in the Utah Constitution.

into the home is the 'chief evil against which the wording of the Fourth Amendment is directed.'" *State v. Maxwell*, 2011 UT 81, ¶ 13, 275 P.3d 220 (quoting *United States v. United States Dist. Court*, 407 U.S. 297, 313 (1972)). For that reason, "warrantless searches and seizures within an individual's home are 'presumptively unreasonable[.]'" *Id.* (quoting *Payton v. New York*, 445 U.S. 573, 586 (1980)).

¶13    Nevertheless, the "ultimate touchstone of the Fourth Amendment is 'reasonableness,'" and "the warrant requirement is subject to certain reasonable exceptions." *Kentucky v. King*, 563 U.S. 452, 459 (2011) (quoting *Brigham City v. Stuart*, 547 U.S. 398, 403 (2006)). One well-established exception is where "'the exigencies of the situation' make the needs of law enforcement so compelling that the warrantless search is objectively reasonable under the Fourth Amendment." *Mincey v. Arizona*, 437 U.S. 385, 394 (1978) (quoting *McDonald v. United States*, 335 U.S. 451, 456 (1948)). *Accord Michigan v. Fisher*, 558 U.S. 45, 47 (2009) (per curiam); *Maxwell*, 2011 UT 81, ¶ 14.

¶14    In *Brigham City v. Stuart*, 547 U.S. 398 (2006),[3] the United States Supreme Court held that one such "exigency obviating the requirement of a warrant is the need to assist persons who are seriously injured or threatened with such injury." *Id.* at 403. "The need to protect or preserve life or avoid serious injury is justification for what would be otherwise illegal[.]" *Id.* (citation and internal quotation marks omitted). The Court made it clear in *Brigham City* that law enforcement officers may enter a

---

3. *Brigham City v. Stuart* began its appellate journey in this court. *See* 2002 UT App 317, 57 P.3d 1111 (affirming order suppressing evidence premised on the ground that a warrantless search was illegal). *See also Brigham City v. Stuart*, 2005 UT 13, 122 P.3d 506 (affirming Utah Court of Appeals decision), *rev'd*, 547 U.S. 398 (2006).

residence without a warrant where they have "an objectively reasonable basis" to believe that any of its occupants are in need of such assistance. *Id.* at 406. The Utah Supreme Court has referred to this principle as the "emergency aid doctrine." *See, e.g.*, *State v. Anderson*, 2015 UT 90, ¶ 19, 362 P.3d 1232.

¶15 Defendant advances two reasons why he believes it was error for the district court to apply the emergency aid doctrine in his case. First, he maintains that his "mother's concern that her adult son had not contacted her in four days did not [rise] to the level of an emergency as contemplated by law." Second, he argues that even if Deputy Johnson had been justified in concluding that an emergency existed given Defendant's mother's report, he could not reasonably have concluded that such an emergency was taking place inside Defendant's home once he arrived on the scene and surveyed the premises.[4] We address Defendant's arguments in turn.

---

4. Defendant also contends that Deputy Johnson "did not have an objectively reasonable basis to believe that . . . there was an immediate need for assistance for the protection of life." His language mirrors our own in *Salt Lake City v. Davidson*, 2000 UT App 12, 994 P.2d 1283, where we adopted an ill-fated three-prong test for determining when warrantless searches are justified under the emergency aid doctrine. *Id.* ¶ 12 (Pursuant to the *Davidson* test, "a warrantless search is lawful under the emergency aid doctrine if the following requirements are met: (1) Police have an objectively reasonable basis to believe that an emergency exists and *believe there is an immediate need for their assistance for the protection of life*. (2) The search is not primarily motivated by intent to arrest and seize evidence. (3) There is some reasonable basis to associate the emergency with the area or place to be searched.") (emphasis added). To the extent our test involved inquiring into an officer's subjective motivations for engaging in a search, the United States Supreme Court has

(continued…)

¶16    We conclude that Defendant's first argument is foreclosed by the Supreme Court's decisions in *Brigham City* and *Michigan v. Fisher*, 558 U.S. 45 (2009) (per curiam). In *Fisher*, law enforcement officers responded to a complaint about a disturbance taking place inside a residence. 558 U.S. at 45. Upon arriving at the scene, the officers found "a pickup truck in the driveway with its front smashed." *Id.* They also found "blood on the hood of the pickup and on clothes inside of it, as well as on one of the doors of the house." *Id.* at 46. "Through a window, the officers could see [the] respondent . . . inside the house, screaming and throwing things." *Id.* They could also see that the respondent had a cut on his hand. *Id.*

¶17    The officers knocked on the door and asked whether the respondent needed medical attention. *Id.* He ignored their offers of assistance and demanded that they get a search warrant. *Id.*

---

(…continued)

unambiguously held that this is not the law. *See Brigham City v. Stuart*, 547 U.S. 398, 404 (2006) ("An action is 'reasonable' under the Fourth Amendment, regardless of the individual officer's state of mind, as long as the circumstances, viewed *objectively*, justify [the] action.") (emphasis and brackets in original) (citation and additional internal quotation marks omitted). And while the United States Supreme Court has not rejected our "protection of life" requirement outright, it is doubtful that the requirement would survive review in light of more recent decisions. *See Michigan v. Fisher*, 558 U.S. 45, 49 (2009) (per curiam) ("Officers do not need ironclad proof of 'a likely serious, life-threatening' injury to invoke the emergency aid exception."). But because we hold that there was an objective basis for Deputy Johnson's belief that Defendant's life was in danger, the "protection of life" requirement is satisfied in any event, and we have no need to further consider the viability of the second prong of the *Davidson* test here.

One of the officers then "pushed the front door partway open and ventured into the house" but withdrew upon seeing that the respondent was pointing a gun at him. *Id.* The respondent was later charged with assault with a dangerous weapon and possession of a firearm during the commission of a felony. *Id.*

¶18    The trial court concluded, and the Michigan Court of Appeals agreed, that by entering the respondent's home the officer had violated his Fourth Amendment rights. *Id.* The court of appeals observed that while "there was evidence an injured person was on the premises," nevertheless "the mere drops of blood did not signal a likely serious, life-threatening injury." *Id.* at 48 (citation and internal quotation marks omitted). In fact, the officers had seen that the respondent "was very much on his feet and apparently able to see to his own needs." *Id.* (citation and internal quotation marks omitted). Accordingly, the Michigan Court of Appeals held that the situation "did not rise to a level of emergency justifying the warrantless intrusion into a residence." *Id.* (citation and internal quotation marks omitted).

¶19    The United States Supreme Court reversed the Michigan Court of Appeals, stating that "[e]ven a casual review of *Brigham City* reveals the flaw in this reasoning." *Id.* at 49. Law enforcement does "not need ironclad proof of 'a likely serious, life-threatening' injury to invoke the emergency aid exception." *Id.* On the contrary, in *Brigham City* the Court held that the exception applied even where police observed an injury no more serious than a bloody lip inflicted upon an adult by a juvenile. *Id.* It therefore "sufficed to invoke the emergency aid exception that it was reasonable to believe that [the respondent] had hurt himself (albeit nonfatally) and needed treatment that in his rage he was unable to provide[.]" *Id.*

¶20    In view of the principles articulated in *Brigham City* and *Fisher*, we hold that Deputy Johnson had an "objectively reasonable basis" for believing that the situation he encountered

at Defendant's residence was serious enough to constitute an emergency. On the unique facts of this case, we reach this conclusion even though Deputy Johnson did not see Defendant inside his home, much less in apparent distress.

¶21   Deputy Johnson's reasonable belief that Defendant was experiencing a serious medical emergency is supported by several unchallenged findings in the district court's memorandum decision. The court found, first, that Defendant's mother had informed law enforcement that he was suffering from "ongoing health issues." It also found that Defendant's mother had informed law enforcement that, although typically they would speak on a near-daily basis, she had not heard from Defendant in several days. Furthermore, it found that Defendant's neighbors had told law enforcement that they had not seen or heard from Defendant in two or three days. Finally, the court found that Deputy Johnson had conducted similar welfare checks in the past, and that during those checks he "had . . . found individuals in their home either dead or incapacitated." Taking all these circumstances into account, it was objectively reasonable for Deputy Johnson to conclude, upon receiving no response to his knocking and hollering, that Defendant may well be inside the home in need of medical attention.

¶22   Defendant also advances the argument that the circumstances Deputy Johnson confronted did not rise to the level of an emergency because the record does not contain evidence "explaining the basis for [his mother's] opinion" regarding her son's "ongoing health issues." While this is a good point,[5] Defendant's argument is in conflict with the logic of

---

5. With the benefit of hindsight, further inquiry would have been the better practice to make sure that Defendant's mother was not just a worrier by nature and that her concerns had a clear

(continued…)

*Brigham City* and *Fisher*. In the words of the United States Supreme Court, "Officers do not need ironclad proof of 'a likely serious, life-threatening injury' to invoke the emergency aid exception." *Michigan v. Fisher*, 558 U.S. 45, 49 (2009) (per curiam). Reasonableness—not certainty—is the standard, and the district court's well-supported findings are enough to convince us that the reasonableness standard was satisfied here.

¶23 We therefore turn to Defendant's second argument. Defendant contends that the district court erred in applying the emergency aid doctrine because, from all appearances, "no one was home" when Deputy Johnson arrived at Defendant's residence to conduct the welfare check.[6] Defendant supports his

---

(…continued)
medical basis: From what condition or conditions did Defendant suffer? Did he take medications for these conditions? Did he have any history of skipping his prescribed doses? Did he have a history of heart issues, seizures, or passing out? On balance, though, given the history of frequent conversation between mother and son, it was not unreasonable for Deputy Johnson to infer that Defendant's mother had in-depth knowledge of her son's health issues and that she would not have sounded the alarm but for a reasonable basis in fact for her concerns. Such an inference would usually not be enough on which to premise a warrantless entry, but it suffices here because of the pattern of near-daily communication between Defendant and his doting mother.

6. Here, again, Defendant relies on the language of our test in *Salt Lake City v. Davidson*, 2000 UT App 12, 994 P.2d 1283, arguing that the emergency aid doctrine does not apply because the third prong of the *Davidson* test was not satisfied. Specifically, Defendant maintains that Deputy Johnson "did not have a reasonable basis to associate the emergency with the area

(continued…)

argument by pointing out that "[n]o vehicles were present on the property," and that even if Deputy Johnson had reason to suspect Defendant was ill, he "did not observe Defendant lying on the floor inside."

¶24 Under different circumstances, Defendant's argument might be persuasive. As it stands, however, the undisputed findings of the district court persuade us that Deputy Johnson had an "objectively reasonable basis" for believing that Defendant was likely experiencing a medical emergency inside his home, albeit not in view through a window.

¶25 It is true that in both *Brigham City* and *Fisher*, law enforcement officers did not enter a private residence without a warrant until they had personally witnessed injured individuals inside. Nevertheless, the standard articulated in those cases is not visual confirmation—it is reasonableness. *See Brigham City v. Stuart*, 547 U.S. 398, 404 (2006) ("An action is 'reasonable' under the Fourth Amendment . . . 'as long as the circumstances, viewed objectively, justify [the] action.'") (brackets in original)

_____

(…continued)
or place [he] searched." *Cf. id.* ¶ 12 ("[A] warrantless search is lawful under the emergency aid doctrine if . . . [t]here is some reasonable basis to associate the emergency with the area or place to be searched."). Because we hold that the facts and circumstances known to Deputy Johnson at the time of the welfare check were legally sufficient to invoke the emergency aid exception under the United States Supreme Court's "objectively reasonable basis" test and permit his warrantless entry into Defendant's home, we have no occasion to comment on the continuing vitality of the third prong of the *Davidson* test. But nothing in the language of that prong leads us to believe that it requires a standard of judicial review that is any more or less exacting than the federal test.

(emphasis omitted) (quoting *Scott v. United States*, 436 U.S. 128, 138 (1978)). The only question we need ask, then, is whether, under the circumstances, it was objectively reasonable for Deputy Johnson to conclude that Defendant was likely at home when he arrived to conduct the welfare check.

¶26 The district court made several findings of fact which, taken together, persuade us that Deputy Johnson's conclusion was a reasonable one. The court found, for example, that Deputy Johnson could see someone had recently been working on leaky pipes under the home's crawl space. An extension cord powering a lamp was strung through an open window into the crawl space, and the area around the crawl space was still moist—not the scene one would expect if the homeowner had simply left for a few days. The court also found that Deputy Johnson observed some tools that had been left on top of the roof near the air conditioning unit and that a ladder was left leaning up against the home near the tools. Again, this is evidence more consistent with Defendant taking ill or becoming injured while working on his home than it is indicative of someone who had decided to leave on a trip for two or three days. Under these circumstances, we believe it was objectively reasonable to conclude that Defendant was likely at home and in need of medical attention.

¶27 Accordingly, we hold that the district court, given the facts it found, correctly concluded that Deputy Johnson's warrantless entry was permissible under the emergency aid doctrine. The court therefore did not err in denying Defendant's motion to suppress.

¶28 Affirmed.

─────────