*This opinion is subject to revision before final publication in the Pacific Reporter*

**2018 UT 11**

IN THE

# SUPREME COURT OF THE STATE OF UTAH

STATE OF UTAH,
*Appellee,*

*v.*

MICHAEL BINKS,
*Appellant.*

No. 20160235
Filed March 6, 2018

On Direct Appeal

Fourth District, Provo
The Honorable Claudia Laycock
No. 141401875

Attorneys:

Sean D. Reyes, Att'y Gen., Karen A. Klucznik, Asst. Solic. Gen., Julia Thomas, Salt Lake City, for appellee

Douglas J. Thompson, Margaret P. Lindsay, Provo, for appellant

ASSOCIATE CHIEF JUSTICE LEE authored the opinion of the Court, in which CHIEF JUSTICE DURRANT, JUSTICE HIMONAS, JUSTICE PEARCE, and JUSTICE PETERSEN joined.

ASSOCIATE CHIEF JUSTICE LEE, opinion of the Court:

¶1 Michael Binks was convicted of possession of drugs and drug paraphernalia. In this appeal he challenges the denial of his motion to suppress the evidence that formed the basis for his conviction. We affirm.

¶2 When officers stopped Binks's vehicle, they had at least reasonable suspicion to investigate two traffic violations and possible drug possession. And when the officers approached the vehicle they gained reasonable suspicion of another offense — driving under the influence. The officers were entitled under *Terry v. Ohio*,

392 U.S. 1 (1968), to detain Binks for a reasonable time while they investigated these offenses. We affirm on that basis without reaching the other two grounds asserted by the State for defending the search—that police were justified in searching Binks based on the warrant for the apartment Binks had just visited and that Binks was within the vicinity of the residence covered by the search warrant and thus a proper subject of the warrant under *Bailey v. United States*, 568 U.S. 186 (2013).

I

¶3    On June 26, 2014, the Utah County Major Crimes Task Force executed a search warrant on an apartment in American Fork, Utah. Officers with the task force had obtained a warrant to search the listed apartment for "narcotics, paraphernalia," and "other items associated with the use/distribution of controlled substances." The warrant also authorized police to search (1) any "person at the location or attempting to leave the location at the time of warrant service" and (2) "[a]ny vehicle parked at the location or attempting to leave the location during the time of service."

¶4    Shortly before 8:00 a.m. on June 26, Detective Phillip Crawford began surveilling the apartment from a position in the parking lot behind the apartment. Two other officers, Sergeant Jones and Deputy Robinson, had set up surveillance a few blocks away. Just before Detective Crawford could leave his vehicle and serve the warrant, he saw two men arrive in a silver SUV. One or both men then entered the apartment, stayed for two or three minutes, and left in the SUV.

¶5    As the SUV left the premises, Detective Crawford radioed orders to Sergeant Jones and Deputy Robinson to stop the car. Detective Crawford also reported that the SUV had failed to signal when exiting the parking lot. Crawford believed that the vehicle was covered within the terms of the warrant, but noted the traffic violation as "kind of a double safety."

¶6    Immediately after radioing to Sergeant Jones and Deputy Robinson, Detective Crawford and other officers served the warrant on the apartment identified in the warrant. Detective Crawford testified that the elapsed time between radioing a description of the car and serving the warrant on the apartment was just "long enough to walk . . . the distance from our vehicle to where the residence is."

¶7    Sergeant Jones received the order from Detective Crawford and almost immediately spotted the silver SUV. While tailing the car, Jones saw the driver commit yet another traffic violation—stopping beyond the painted line at a stop sign. The officers activated their lights and stopped the car at 8:01 a.m.

¶8    When Deputy Robinson approached the vehicle, he noticed that Michael Binks, the driver, had glossy and bloodshot eyes and that the vehicle smelled of alcohol. The officer also noted that Binks seemed "very nervous"—"actually shaking, he was that nervous." Deputy Robinson suspected that Binks was under the influence of drugs or alcohol and promptly performed several field sobriety tests. Binks passed those tests.

¶9    Deputy Robinson then returned to his patrol car and ran Binks's license, the passenger's license, and the SUV's license plate number. Sergeant Jones stayed with Binks and checked for signs and symptoms of drug use. The record checks were completed between 8:16 a.m. and 8:17 a.m.

¶10    While Sergeant Jones and Deputy Robinson questioned Binks, Detective Crawford searched the apartment. The occupants of the apartment confirmed that the two men who had visited the apartment while police were surveilling had purchased $30 worth of methamphetamine. The detective began trying to contact Sergeant Jones, but reception was spotty.

¶11    Sergeant Jones testified that he received word from Detective Crawford at 8:22 a.m. that Binks had bought methamphetamine. Deputy Robinson immediately searched Binks and found a baggie with half a gram of methamphetamine inside a pocket. The officers arrested Binks, and he was charged with possession of a controlled substance and possession of drug paraphernalia.

II

¶12    Binks challenges all three of the State's grounds for defending the search at issue in this case. He says that that the length of his detention was too prolonged to be justified under *Terry v. Ohio*, 392 U.S. 1 (1968); that the search was not authorized by the terms of the warrant; and that the scope of the warrant cannot be extended to encompass him within the standard set forth in *Bailey v. United States*, 568 U.S. 186 (2013).

¶13 We affirm on the first ground without reaching the other two. We hold that Binks's detention was valid under *Terry* because the officers had at least reasonable suspicion of several separate offenses—two traffic violations, driving under the influence, and drug possession—and officers did not prolong the stop longer than was reasonably necessary to investigate each offense.

¶14 Binks's detention was reasonable under the standard set forth in the *Terry* case. *Terry* authorizes a brief detention of a person by police based on reasonable, articulable suspicion of criminal wrongdoing. *See Terry*, 392 U.S. at 21; U.S. CONST. amend. IV. A *Terry* stop survives Fourth Amendment scrutiny if it is (1) "lawful at its inception" and (2) "otherwise executed in a reasonable manner." *Illinois v. Caballes*, 543 U.S. 405, 408 (2005).

¶15 Binks concedes that the stop was lawful at its inception because an officer has reasonable suspicion to stop a vehicle after observing a traffic violation. *See Rodriguez v. United States*, 135 S. Ct. 1609, 1614 (2015). He even seems to acknowledge that Deputy Robinson acquired reasonable suspicion during the stop to investigate him for driving under the influence. But he argues that the stop became unreasonable when officers finished investigating him for those offenses and continued to detain him while investigating him for drug possession.

¶16 Binks contends that the officers' testimony and radio logs show that by 8:16 a.m. they had completed their sobriety tests and had completed all their record checks on him. He argues then that the officers should have issued him a citation or allowed him to leave by 8:16 a.m. because they had concluded "the only mission they [were] justified in pursuing, namely the traffic citation."

¶17 But Binks's argument ignores the fact that the officers had at least reasonable suspicion to begin investigating another criminal act—possession of a controlled substance. Minutes before Binks's detention, Detective Crawford saw him enter an apartment for which police had a warrant to search for drug distribution. And, consistent with a drug buy, Binks had stayed in the apartment for only two or three minutes. Binks also had glossy and bloodshot eyes when Deputy Robinson approached Binks's vehicle. This arguably

gave officers probable cause to search Binks immediately;[1] it undoubtedly gave them reasonable suspicion to investigate the matter further and to detain Binks in the process.

¶18  So when Sergeant Jones and Deputy Robinson had completed the traffic stop and had determined that Binks was not under the influence of alcohol—the point in time when Binks argues they should have let him go—they were still entitled to continue their investigation into drug possession. And this included trying to deduce signs and symptoms of drug use as well as waiting for word from Detective Crawford regarding the results of his search of the apartment.

¶19 We affirm on these grounds. We conclude that officers detained Binks "no longer than [was] necessary to effectuate the purpose of the stop." *State v. Baker*, 2010 UT 18, ¶ 17, 229 P.3d 650 (citation omitted). Detective Crawford relayed information to the officers from his parallel investigation in a reasonable amount of time, and Sergeant Jones and Deputy Robinson worked diligently to wrap up their investigation into drug possession.

### III

¶20 Binks has raised important legal questions regarding the proper scope of the warrant at issue under the standard set forth in *Bailey v. United States*, 568 U.S. 186 (2013), and whether police were justified in relying on the warrant to stop and search him. We do not reach these questions, however, because we conclude that the officers conducted a proper search under *Terry v. Ohio*, 392 U.S. 1 (1968).

---

[1] The State has argued only that the officers conducted a reasonable *Terry* stop, so we do not decide whether these circumstances amount to probable cause.