**2019 UT App 55**

# THE UTAH COURT OF APPEALS

STATE OF UTAH,
Appellee,
*v.*
ROBERT DENNIS MALLOY,
Appellant.

Opinion
No. 20170538-CA
Filed April 11, 2019

Third District Court, Salt Lake Department
The Honorable Todd M. Shaughnessy
No. 161903789

Andrea J. Garland and Elise C. Lockwood, Attorneys
for Appellant

Sean D. Reyes and Jeffrey S. Gray, Attorneys
for Appellee

JUDGE DIANA HAGEN authored this Opinion, in which
JUDGES MICHELE M. CHRISTIANSEN FORSTER and DAVID N.
MORTENSEN concurred.

HAGEN, Judge:

¶1 Robert Dennis Malloy entered a conditional guilty plea under rule 11(j) of the Utah Rules of Criminal Procedure to one count of driving under the influence in exchange for the State dismissing one count each of possession of drug paraphernalia and possession or use of a controlled substance. On appeal, Malloy contends the district court erred in denying his motion to suppress the paraphernalia and controlled-substance evidence that he alleges was discovered in violation of his Fourth Amendment rights. Because the officer had the authority to open the door to Malloy's vehicle to investigate whether Malloy was an impaired driver, we affirm.

BACKGROUND

¶2      After receiving a report from an eyewitness, police dispatch notified an officer of "a DUI accident" in a fast food parking lot. The caller who reported the accident told dispatch that the driver had fallen asleep and hit a light pole. According to the caller, the driver then awoke, backed away from the pole, and fell asleep again. The officer arrived at the scene and parked behind the vehicle described in the report. Still on the scene, the eyewitness provided his identifying information and confirmed his report. The eyewitness also told the officer that he thought the driver was unconscious and might be dead.

¶3      The officer approached the vehicle and peered into the window "just long enough" to see that the driver was "kind of slumped, slouched forward" and appeared to be unconscious. Without knocking or announcing his presence, the officer opened the door to check on the welfare of the driver, Malloy. According to the officer, upon opening the door, Malloy awoke and the officer observed a drug pipe on the floor between Malloy's feet.

¶4      After waiving his *Miranda*[1] rights, Malloy explained to the officer that he had taken some narcotics for foot pain. Malloy underwent a series of field sobriety tests, which showed "[i]ndications of drug impairment." Malloy was arrested for driving under the influence and a search incident to arrest revealed that Malloy was in possession of heroin. Malloy was charged with driving under the influence, possession of drug paraphernalia, and possession of a controlled substance.

---

1. *Miranda v. Arizona*, 384 U.S. 436, 471–74 (1966) (explaining that an individual who is subject to arrest and interrogation "must be clearly informed" that he has the right to remain silent and "the right to consult with a lawyer and to have the lawyer with him during interrogation").

¶5 Malloy moved to suppress the possession charges, arguing that the officer searched his vehicle without probable cause in violation of his Fourth Amendment rights. He argued that the emergency aid doctrine was the "appropriate analysis to apply" but that "the intrusion [was] not justified under the facts of this case." He further argued that the officer should have knocked on the door or window of the vehicle, because doing so would have provided a "simple, non-intrusive" means of attempting to determine whether a medical emergency existed, and if Malloy "had not stirred or responded, those facts would have supported [the officer's] search of the vehicle." In its opposition, the State argued that the emergency aid exception to the Fourth Amendment allowed the officer to open the door to Malloy's vehicle and investigate whether he required medical attention.

¶6 Following an evidentiary hearing, the district court denied Malloy's motion to suppress. The court concluded that the evidence—including "the nature of the information that was provided to the officer in connection with being dispatched on the call, coupled with the information that was provided to the officer on scene," and the officer's own observation of a driver who appeared unresponsive—"warranted . . . a minimal intrusion of simply opening the door" to see if Malloy required emergency aid.[2]

---

2. Below, the State argued that the community caretaking doctrine also applied as an exception to the Fourth Amendment's warrant requirement. The district court explained that it was "not sure" that the community caretaking doctrine was "clearly as applicable, but to the extent it does apply, . . . the facts here are appropriate under that doctrine as well." Although Malloy challenges this decision on appeal, we do not address it, because we affirm the denial of Malloy's motion to suppress based on an alternate ground apparent on this record. *See State v. McLeod*, 2018 UT App 51, ¶ 21, 420 P.3d 122.

¶7   A few months later, Malloy entered a conditional guilty plea under rule 11(j) of the Utah Rules of Criminal Procedure in which he agreed to plead guilty to driving under the influence and reserved the right to appeal the denial of his motion to suppress. In exchange, the State offered to dismiss the possession charges, which the court accepted. The court suspended Malloy's sentence and placed him on supervised probation.

¶8   Malloy now appeals the denial of his motion to suppress.

## ISSUE AND STANDARDS OF REVIEW

¶9   Malloy contends the district court erred in denying his motion to suppress the evidence discovered during a search of his vehicle based on the emergency aid exception to the Fourth Amendment's warrant requirement. The denial of "a motion to suppress for an alleged Fourth Amendment violation [is] a mixed question of law and fact." *State v. Adams*, 2017 UT App 205, ¶ 11, 407 P.3d 1027 (quotation simplified). We review the district court's factual findings for clear error and its legal conclusions for correctness, "including its application of law to the facts of the case." *Id.* (quotation simplified). Although we are "limited to the findings of fact made by the trial court," we may affirm "on any legal ground or theory apparent on the record," as long as we do not "reweigh the evidence in light of the new legal theory or alternate ground." *State v. McLeod*, 2018 UT App 51, ¶ 21, 420 P.3d 122 (quotation simplified).

## ANALYSIS

¶10   Malloy contends the district court erroneously denied his motion to suppress in violation of his Fourth Amendment rights. The Fourth Amendment to the United States Constitution guarantees "the right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and

seizures." U.S. Const. amend. IV. "[T]he 'touchstone of the Fourth Amendment is reasonableness,' which 'is measured in objective terms by examining the totality of the circumstances.'" *State v. Baker*, 2010 UT 18, ¶ 10, 229 P.3d 650 (quoting *Ohio v. Robinette*, 519 U.S. 33, 39 (1996)). "Reasonableness under the Fourth Amendment depends on a balance between the public interest and the individual's right to personal security free from arbitrary interference by law officers." *Id.* (quotation simplified).

¶11 The parties have presented this case as involving two separate Fourth Amendment intrusions—a seizure followed by a search. As an initial matter, the parties agree that the officer initiated a seizure by parking behind Malloy thereby blocking his ability to leave the scene. In order to justify such an investigative detention, known as a *Terry* stop, the officer must have reasonable articulable suspicion of criminal activity. *See Terry v. Ohio*, 392 U.S. 1, 21 (1968). Malloy does not contest the lawfulness of his seizure. Although the district court had no need to rule on this undisputed issue, the facts found by the district court unquestionably demonstrate that the *Terry* stop was justified to investigate the officer's reasonable suspicion that Malloy was operating or in actual physical control of a vehicle while under the influence or otherwise impaired. *State v. James*, 2000 UT 80, ¶ 11, 13 P.3d 576 (determining that an officer had "more than adequate reasonable suspicion" to detain a driver and investigate based "on a citizen's detailed report of a reckless driving pattern that was consistent with driving under the influence").

¶12 The disputed issue in this case is whether, having lawfully detained Malloy on suspicion of impaired driving, the officer violated the Fourth Amendment by opening the car door. Malloy characterizes this action as a warrantless search.[3] The

---

3. In the automobile context, officers may conduct a warrantless search of a vehicle if there is probable cause to believe that a readily mobile vehicle contains evidence of a crime. *See*

(continued…)

State argued below, and the district court agreed, that opening the car door was justified under the emergency aid exception to the warrant requirement. However, we "may affirm the judgment appealed from if it is sustainable on any legal ground or theory apparent on the record," even if "such ground or theory is not urged or argued on appeal by appellee, was not raised in the lower court, and was not considered or passed on by the lower court." *Bailey v. Bayles*, 2002 UT 58, ¶ 10, 52 P.3d 1158 (quotation simplified). Based on the record before us, we conclude that it is unnecessary to reach the issue of whether the emergency aid doctrine applies, because opening the car door to investigate Malloy's condition was within the scope of a lawful *Terry* stop. It was not a separate search for which a warrant—or an exception to the warrant requirement—would be necessary.

¶13      A *Terry* stop based on reasonable articulable suspicion of criminal wrongdoing must be both "(1) lawful at its inception and (2) otherwise executed in a reasonable manner." *State v. Binks*, 2018 UT 11, ¶ 14, 416 P.3d 1168 (quotation simplified). Once a lawful stop is initiated, "the detention must be temporary and last no longer than is necessary to effectuate the purpose of the stop." *State v. Morris*, 2011 UT 40, ¶ 18, 259 P.3d 116 (quotation simplified). "Both the length and the scope of the detention must be strictly tied to and justified by the circumstances which rendered its initiation permissible." *Id.* (quotation simplified).

¶14      During the course of a lawful *Terry* stop involving a motor vehicle, "police officers may order the driver out of the vehicle to promote safety, even in the absence of reasonable suspicion, without violating the Fourth Amendment's proscription against unreasonable searches and seizures." *State*

---

(…continued)
*Pennsylvania v. Labron*, 518 U.S. 938, 940 (1996). This separate exception to the warrant requirement, known as the automobile exception, is not at issue in this case.

*v. Warren*, 2003 UT 36, ¶ 24, 78 P.3d 590 (citing *Pennsylvania v. Mimms*, 434 U.S. 106, 109–11 (1997) (per curiam)). Asking a lawfully seized person to exit the vehicle during a traffic stop will result in an "additional intrusion that can only be described as *de minimis*" because "[t]he driver is being asked to expose to view very little more of his person than is already exposed." *Mimms*, 434 U.S. at 111.

¶15     In *State v. James*, 2000 UT 80, 13 P.3d 576, the Utah Supreme Court extended the holding in *Mimms* to allow an officer to open a car door to initiate a face-to-face encounter with the detained driver. The facts of *James* are strikingly similar to those in the case at hand. In *James*, an eyewitness reported to an officer that he had witnessed a reckless driver who was driving "all over the road and had hit or almost struck three other vehicles." *Id.* ¶ 2 (quotation simplified). The eyewitness provided the vehicle's "license number, approximate location, and direction of travel." *Id.* The officer confirmed the information with dispatch, obtained the driver's address, and drove to that address where he observed a vehicle matching the description given by the eyewitness and dispatch. *Id.* The officer pulled up behind the vehicle and approached the driver's side door. *Id.* When he looked through the window, the officer saw the driver and a passenger. *Id.* ¶ 3. The officer opened the door and asked the driver to step out of the vehicle. *Id.* Once the door was open, the officer observed an open can of beer in the car. *Id.* After the driver failed a field sobriety test, the State charged the driver with driving under the influence and having an open container of alcohol in his vehicle. *Id.* The driver "moved to suppress evidence of his intoxicated condition," arguing, among other things, that the officer did not have probable cause to open the vehicle's door. *Id.* ¶ 5.

¶16     The district court denied the motion to suppress, and the Utah Supreme Court affirmed. *Id.* ¶ 13. The officer had a "detailed report of a reckless driving pattern that was consistent with driving under the influence" and therefore "had the right and authority to temporarily detain [the driver]" and order him

to step out of the vehicle, in order to investigate the report of reckless driving. *Id.* ¶ 11. Our supreme court explained that there is a difference between "opening of doors or searches of vehicles to search for physical evidence . . . [and] lawful detention and questioning of individuals." *Id.* ¶ 13. Because the officer "was investigating [the driver] himself" and not the vehicle, "the opening of the door was an incidental factor in the investigation of [the driver's] impaired physical condition, and not an independent search of a vehicle." *Id.* Thus, "[c]ausing the door to be opened in some manner was a reasonable and practical means for obtaining compliance with [the officer's] authority to lawfully require [the driver] to step from the vehicle." *Id.* "To draw distinctions as to who actually opened the door and the nature of any conversation or notification occurring beforehand would elevate form over substance." *Id.* The officer's "investigation into the reasons for [the driver's] reckless driving" therefore did not amount to a violation of the driver's Fourth Amendment rights. *Id.*

¶17    In this case, the officer testified at the hearing on the motion to suppress that he had responded to a report of "a DUI traffic accident" at a fast food restaurant. He had been given a report from dispatch that the driver had nodded off, hit a light pole, awakened, backed away from the light pole, and nodded off again. The officer also confirmed the report with the eyewitness at the scene, where the eyewitness also stated that the driver appeared either unconscious or dead. With this information, the officer approached the vehicle, saw that Malloy was slouched forward and not moving, and opened the door to check on Malloy's condition. Upon opening the door, the officer observed drug paraphernalia and ordered Malloy out of the vehicle. Further investigating Malloy's condition, the officer performed a field sobriety test, which Malloy failed. Just as in *James*, it is irrelevant "who actually opened the door and the nature of any conversation or notification occurring beforehand." *See id.* Because the officer "was investigating [Malloy] himself, and was not searching [Malloy's] vehicle," opening the door "was an incidental factor in the investigation

of [Malloy's] impaired physical condition, and not an independent search of a vehicle." *See id.*

¶18    We agree with the State's argument on appeal that *James* controls the outcome of this case. As in *James*, there is no dispute that the officer had reasonable suspicion to detain Malloy and investigate his impaired condition. Opening the door of Malloy's car was a reasonable form of investigation into Malloy's condition and within the scope of the lawful detention. *See id.* Because the officer was investigating Malloy's condition and not conducting an independent search, he did not violate Malloy's Fourth Amendment rights, and the district court properly denied the motion to suppress.

CONCLUSION

¶19    We conclude that the officer had reasonable suspicion to seize Malloy's vehicle and detain him for further investigation into an eyewitness report that Malloy was driving under the influence. The officer's opening of the vehicle door was incidental to his investigation into Malloy's impaired condition and therefore did not violate Malloy's Fourth Amendment rights. Accordingly, we affirm the district court's denial of Malloy's motion to suppress.

––––––––––