*This opinion is subject to revision before final publication in the Pacific Reporter*

**2021 UT 3**

IN THE

# SUPREME COURT OF THE STATE OF UTAH

STATE OF UTAH,
*Appellee,*

*v.*

ROBERT DENNIS MALLOY,
*Appellant.*

No. 20190446
Heard September 11, 2020
Filed January 21, 2021

On Certiorari to the Utah Court of Appeals

Third District, Salt Lake County
The Honorable Todd M. Shaughnessy
No. 161903789

Attorneys:

Sean D. Reyes, Att'y Gen., Jeffrey S. Gray, Asst. Solic. Gen.,
Samuel P. Sutton, Dist. Att'y, Salt Lake City, for appellee

Andrea J. Garland, Elise C. Lockwood, Salt Lake City,
for appellant

ASSOCIATE CHIEF JUSTICE LEE authored the opinion of the Court, in
which CHIEF JUSTICE DURRANT, JUSTICE HIMONAS, JUSTICE PEARCE,
and JUSTICE PETERSEN joined.

ASSOCIATE CHIEF JUSTICE LEE, opinion of the Court:

¶1    Robert Dennis Malloy was confronted by police officers
while apparently asleep at the wheel of his vehicle at a Salt Lake
City McDonald's. The police had been told that a witness had
seen someone driving a pickup truck in a McDonald's parking lot
who had fallen asleep at the wheel, hit a light pole, and then
backed away into a parking stall and nodded off again. When the
first police officer arrived, he walked up to the truck, looked
inside, and saw someone (Malloy) slouched forward in the

driver's seat and not moving. The officer then opened the truck door and saw evidence of drug paraphernalia between Malloy's feet. Follow-up questions and investigation uncovered additional evidence.

¶2 Malloy was charged with felony DUI and possession of drugs and drug paraphernalia. He moved to suppress the evidence on the ground that the officer had effected an unreasonable search in opening the door of his truck without first knocking on the window. The district court denied the motion, concluding that the officer was justified in opening the door in service of the police officer's "community caretaking" concerns. Malloy entered a conditional guilty plea, reserving the right to appeal the denial of the motion to suppress.

¶3 The court of appeals affirmed on alternative grounds. *State v. Malloy*, 2019 UT App 55, 441 P.3d 756. It held that the officer was justified in opening the car door incident to a lawful traffic stop under the standard in *State v. James*, 2000 UT 80, 13 P.3d 576—a case in which this court noted the settled authority of the police to direct a driver to "leave the vehicle" during the course of an investigation incident to such a stop, asserted that "[c]ausing" a car door to be opened is a "reasonable and practical means" of securing compliance with such an order, and held that there is no "functional" or constitutionally relevant distinction between an officer opening a car door and a driver being asked to do so. *Id.* ¶¶ 10–13. Because the police had the reasonable suspicion necessary to temporarily detain Malloy in his vehicle and ask him to step out of it, the court of appeals cited *James* for the proposition that the subsequent search could not be rendered unreasonable on the ground that *the officer* had opened the car door. *Malloy*, 2019 UT App 55, ¶ 17. And on that basis, the court of appeals declined to reach the community caretaking considerations addressed in the district court. *Id.* ¶ 12.

¶4 Malloy filed a petition for certiorari, which we granted. Malloy challenges the court of appeals' decision on two main fronts. He first asserts that the analysis in *James* is unduly sweeping and has been overtaken by subsequent, binding authority, such as *United States v. Jones*, 565 U.S. 400 (2012) (holding that a physical trespass on a vehicle—in the attachment of a GPS device—constituted a search under the Fourth Amendment). And he also contends that the police acted unreasonably—and not in a manner commensurate with any

community caretaking concerns—in opening his car door and thereby effecting a search.

¶5    We agree with Malloy's first point as a matter of Fourth Amendment principles. On reflection, and over time, our sweeping statements in *James* have been revealed to be overbroad. Under *Jones* and related cases, it can no longer be said that it makes no constitutional difference whether a police officer opens a car door or asks a driver to do so. For reasons explained further below, we repudiate the sweeping language of our opinion in *James* and hold that the identity of the door-opener may well affect the reasonableness of a given police encounter.

¶6    In so stating we are not holding that any and all police acts of door-opening amount to Fourth Amendment searches— much less unreasonable searches, or unreasonable searches triggering the exclusionary rule. In fact, we do not conclude that the evidence here is subject to exclusion. We affirm the denial of Malloy's motion to suppress under the authority of *Davis v. United States*, 564 U.S. 229 (2011). *Davis* establishes an important limitation on the exclusionary rule. It holds that evidence secured in "objectively reasonable reliance on binding . . . precedent" is not subject to exclusion. *Id*. at 232.

¶7    We affirm on that narrow basis. While repudiating and limiting the sweeping language of our opinion in *James*, we hold that the police here acted objectively reasonably in reliance on that precedent. And we thus affirm the denial of the motion to suppress without reaching the ultimate question of the reasonableness of the search or seizure in question (as an element of a traffic stop or an encounter incident to community caretaking).

I

¶8    In the early hours of a March morning in 2016, Officer Matthew Overman responded to a report that "the driver of [a] truck had fallen asleep and hit" a light pole in a McDonald's parking lot in Salt Lake City. Overman received an update on his way to the scene—an indication that the driver had initially passed out, then stirred, backed into a parking space, and passed out again. When he got to the McDonald's, Overman saw no damage to either the truck or the pole. A witness approached Overman and told him what had happened, and that he was worried the driver was dead, as "he looked gray." Overman took down the witness's contact information before approaching the

truck. As he neared the truck, Overman observed that the driver was "kind of slumped, slouched forward" over the steering wheel, and "appeared to be unconscious."

¶9   Without knocking, Officer Overman opened the door of the truck. The driver (Malloy) immediately turned and looked at him. Overman observed a drug pipe on the floor of the vehicle between Malloy's feet, which he retrieved as he asked Malloy "what he was doing and why he was slouched over." The officer asked Malloy to exit the truck, and as he did, Overman saw a meth pipe on the driver's seat, as well as a plate of pancakes and sausage on the console between the seats. After being handcuffed and told to sit on the curb, Malloy told a backup officer who had arrived that "he had taken oxycodone for some foot pain." Malloy then "failed a series of field sobriety tests" and was arrested for driving under the influence of drugs. "In a search incident to arrest, the officers found heroin in Malloy's left coat pocket." After obtaining a search warrant, the officers collected a blood sample, which ultimately tested positive for methamphetamine.

¶10 Malloy was charged with driving under the influence of drugs, unlawful possession of a controlled substance, and possession of drug paraphernalia. He moved to suppress the evidence, asserting that Overman had "conducted an unlawful search when he opened the truck door without first knocking on the window to see if Malloy would respond." The State opposed the motion, "arguing that opening the truck door was justified" under an emergency aid or community caretaking "exception[] to the warrant requirement." The district court denied the motion, concluding that the search was reasonable as a matter of emergency aid or community caretaking.

¶11 After entering a conditional plea, Malloy filed an appeal from the denial of the motion to suppress. On appeal, the State again argued that opening the door was justified under the emergency aid exception. The court of appeals affirmed on an alternative ground. Because Overman could have opened the door to investigate Malloy's condition as part of a lawful traffic stop, opening the door was not an independent search, but a factor incidental to a reasonable investigation of the driver. *State v. Malloy*, 2019 UT App 55, ¶ 19, 441 P.3d 756 (relying on *State v. James*, 2000 UT 80, ¶ 13, 13 P.3d 576).

¶12 Malloy sought to challenge that decision in a petition for certiorari, which we granted. Our review on certiorari is for

correctness. *State v. Ainsworth*, 2017 UT 60, ¶ 13, 423 P.3d 1229 ("We review the court of appeals' decision for correctness, without according any deference to its analysis.").

II

¶13 Malloy presents two principal challenges to the decision of the court of appeals. He first contends that the court of appeals erred in giving controlling effect to our sweeping statement in *State v. James* that there is no "functional" or constitutionally relevant distinction between an officer opening a car door and a driver being asked to do so. 2000 UT 80, ¶ 13, 13 P.3d 576. Because in his view the police acted unreasonably—and not in a manner commensurate with any community caretaking concerns—in opening his car door and thereby effecting a search, Malloy also claims that the evidence secured by the police should have been excluded.[1]

¶14 We agree with Malloy's first point but reject his second. First, we find the sweeping language of our holding in *James* to have been overtaken by subsequent, binding authority—in particular, the decision in *United States v. Jones*, 565 U.S. 400 (2012). In light of cases like *Jones*, we hold that there may well be a "functional," constitutionally relevant distinction between an officer opening a car door and a driver being asked to open it. Second, we nonetheless affirm the denial of Malloy's motion to suppress under *Davis v. United States*, 564 U.S. 229 (2011). *Davis* holds that the exclusionary rule does not apply to "searches conducted in objectively reasonable reliance on binding . . .

---

[1] Malloy also questions the propriety of the decision to affirm on alternative grounds. He asserts that the basis of the decision under *James* is not apparent in the record in light of findings in the district court that the officer in this case "opened the door for a welfare check" of the driver, not "to remove the driver" in the course of a traffic stop. But this objection is rooted in a mistaken premise. The propriety of a traffic stop is measured objectively. *Whren v. United States*, 517 U.S. 806, 813 (1996) (rejecting the argument that "the constitutional reasonableness of traffic stops depends on the actual motivations of the individual officers involved"). So it matters not what the officer's subjective motivation may have been. And the findings in the record are thus no barrier to our decision.

precedent." *Id.* at 232. Our *James* opinion is binding precedent in our Utah justice system until we set it aside. And we affirm on the ground that the police were entitled to rely on our precedent and suppression is thus improper under *Davis.*[2]

A

¶15 Our decision in *James* arose from a traffic stop. A police officer had responded to a report of reckless driving and engaged in a lawful traffic stop to investigate the allegedly reckless driver. *State v. James*, 2000 UT 80, ¶ 2, 13 P.3d 576. When the officer approached the truck, he could see there were two people inside it but could not clearly see what they were doing. *Id.* ¶¶ 3, 3 n.1. Concerned for his safety, the officer opened the truck door before ordering the driver (James) to exit the vehicle. *Id.* Upon opening the door, the officer observed a twelve-pack of beer sitting on the passenger side floor of the vehicle, with one of the cans opened. *Id.* ¶ 3. The officer reported that James "smelled strongly of alcohol, his face was flaccid, his speech slurred, and his eyes were droopy and bloodshot." *Id.* He "appeared to be unstable, unable to stand straight." *Id.* The officer eventually conducted a field sobriety test, which James failed. *Id.* ¶ 4. The officer then arrested James, who was charged "with driving under the influence and having an open container of alcohol in his vehicle." *Id.*

---

[2] Our analysis and holding are governed and limited by federal law. That is because Malloy has asserted a claim only under the Fourth Amendment of the United States Constitution. He has not invoked or developed an argument under article I, section 14 of the Utah Constitution. That is his prerogative as a litigant. But he may be leaving some cards on the table. *See State v. Watts*, 750 P.2d 1219, 1221 n.8 (Utah 1988) (noting that our court had not yet interpreted the search and seizure provision of the Utah Constitution "in a manner different from the fourth amendment to the federal constitution" but entertaining "the possibility of doing so in some future case"); JEFFREY S. SUTTON, 51 IMPERFECT SOLUTIONS: STATES AND THE MAKING OF AMERICAN CONSTITUTIONAL LAW, 7–10 (2018) (analogizing claims to potentially game-winning free throws at the end of a basketball game; asserting that it makes no sense for the shooter to take "just one shot rather than two to invalidate state or local . . . executive branch action").

¶16 We upheld the reasonableness of this encounter under the Fourth Amendment. In so doing we emphasized that the question presented went only to the "propriety of opening the driver's-side door of James's truck for the purpose of speaking to James and requesting that he step out of the vehicle." *Id*. ¶ 11. Because the record exhibited ample grounds for reasonable suspicion of James's involvement in reckless driving, we concluded that the police had a right to "temporarily detain" his vehicle "for the purpose of conducting a limited investigation of the suspicion." *Id*. ¶ 10 (citing *Whren v. United States*, 517 U.S. 806, 810 (1996)). We also held that the police were "legally authorized to order James to step from the cab of his truck" under *Pennsylvania v. Mimms*, 434 U.S. 106, 110–11 (1977). *James*, 2000 UT 80, ¶ 11. And we identified the *Mimms* premise as a logical ground for our conclusion that there was no "functional" or constitutional basis for any distinction "as to who actually opened the door." *Id*. ¶ 13.

¶17 In *James* we observed that "[c]ausing the door to be opened *in some manner* was a reasonable and practical means for obtaining compliance with" the police officer's "authority to lawfully require James to step from the vehicle." *Id*. (emphasis added). We then pivoted to the broader conclusion that the identity of the door-opener "was an incidental factor" in the encounter. *Id*. Ultimately, we broadly refused to "draw distinctions" under the Fourth Amendment based on "who actually opened the door"—a matter we characterized as "elevat[ing] form over substance." *Id*. And we upheld the reasonableness of the officer's "opening of James's door" as a permissible element of the investigation of James's alleged reckless driving. *Id*.

¶18 Our analysis in *James* was plausibly rooted in the notion that the rights protected by the Fourth Amendment are defined by "a person's reasonable expectation of privacy," *id*. ¶ 9 (citing *United States v. Jacobson*, 466 U.S. 109, 113 (1984))—a formulation that traces to a concurring opinion of Justice Harlan in *Katz v. United States*, 389 U.S. 347, 360 (1967) (Harlan, J., concurring). But the "reasonable expectation" standard has been limited by subsequent authority. It is now viewed as only one of two alternative grounds for evaluating the scope of a person's Fourth Amendment rights. A parallel line of precedent has emerged, most notably in *United States v. Jones*, in which the Supreme Court has defined the scope of Fourth Amendment protection by reference to a "property-based" inquiry that looks to a founding-era notion of "common-law trespass." 565 U.S. 400, 405 (2012); *see*

*also Kyllo v. United States*, 533 U.S. 27, 31 (2001) (considering founding-era principles of common-law trespass in defining the nature of a Fourth Amendment "search").

¶19 The *Jones* opinion held that the government effected a Fourth Amendment search in attaching a GPS device to a vehicle to monitor its movements. 565 U.S. at 404. It did so on the basis of an originalist, property-based inquiry. It held that the attachment of a GPS device would have qualified as a "trespass" on private property and would have been considered a "search" where the trespass was aimed at obtaining information.[3] *Id*. at 406, 406 n.3.

---

[3] A trespass without announcement or consent may often have this effect. It may sometimes be the whole point. *See The Office: Frame Toby* (NBC television broadcast Nov. 20, 2008) (Dwight to the camera: "I love catching people in the act. That's why I always whip open doors."). The facts of this case could be illustrative. When the officer opened the door to Malloy's car he revealed a drug pipe between his feet. That evidence may not have been revealed if the officer had knocked on the window, awakened Malloy, and asked him to open the door.

In so observing, we are by no means establishing a "knock and announce" rule for traffic stops or community caretaking encounters. To date, the "knock and announce" rule—informed by its exceptions—has been limited to dwellings. *See Wilson v. Arkansas*, 514 U.S. 927, 931–32 (1995) (noting that the founding-era common law afforded some significance to "whether law enforcement officers announced their presence and authority prior to entering" a dwelling); *Hudson v. Michigan*, 547 U.S. 586, 589 (2006) (noting exceptions to the "rule," as where "there is 'reason to believe that evidence would likely be destroyed if advance notice were given'" (citation omitted)). Traffic stops and community caretaking encounters, moreover, have been governed by a "reasonableness" requirement that may not lend itself to a hard-and-fast rule of announcement. *See Brigham City, Utah v. Stuart*, 547 U.S. 398, 408 (2006) (noting that an officer acting in a community caretaking capacity would not need to knock when it is "obvious" that knocking "would have been futile"); *State v. Anderson*, 2015 UT 90, ¶ 26, 362 P.3d 1232 (establishing a reasonableness standard for community caretaking encounters).

We need not and do not parse the reasonableness of the police encounter at issue here under these standards. We simply clarify

(continued . . .)

The central holding of *Jones* is that a "physical intrusion of a constitutionally protected area"—someone's "person[]," "house[]," "papers," or "effects" (which includes vehicles)—may qualify as a search under the Fourth Amendment.[4] *Id*. at 404–07.

¶20 An "actual trespass" alone "is neither necessary nor sufficient to establish a constitutional violation." *Id*. at 408 n.5 (emphasis, citation, and internal quotation marks omitted). But a physical intrusion amounting to a trespass under the common-law may amount to a search where it is "conjoined with . . . an attempt to find something or to obtain information." *Id*.

¶21 The originalist analysis in *Jones* overtakes and forecloses our sweeping holding in *James*. With the focus shifted from the vague notion of a reasonable expectation of privacy to a property-based inquiry into trespass, it can no longer be said that there is no salient difference between a police officer opening a door and a vehicle driver doing so. The identity of the door-opener is not "form over substance." It is the very substance of the notion of a trespass.

¶22 A trespass is an unconsented physical "intrusion" on a person's property. Such intrusion is effected when a police officer physically touches or impacts another person's property, as with the attachment of a GPS device to a car, or even "an officer's momentary reaching into the interior of a vehicle."[5] There is no

---

that an officer's physical intrusion on a vehicle can carry implications not presented by a mere request for compliance by the driver.

[4] The originalist inquiry was not established as an exclusive touchstone in *Jones*. The *Jones* opinion preserved the "reasonable expectation of privacy" standard as an additional, parallel standard of protection. *See United State v. Jones*, 565 U.S. 400, 408–09 (2012). Under *Jones*, the originalist, common-law trespass inquiry yields additional protection. "Situations involving merely the transmission of electronic signals without trespass . . . *remain* subject to" the "reasonable expectation of privacy" standard. *Id. at 411.

[5] *Id*. at 410 (citing *New York v. Class*, 475 U.S. 106, 114–15 (1986), in support of the view that such "momentary reaching" is a Fourth Amendment search).

trespass, however, where the intrusion on property is effected through the consent or invitation of the property owner.[6]

¶23 This originalist, property-based standard forecloses our sweeping holding in *James*. The trespass inquiry may often turn on whether a physical intrusion was effected with the consent of the property owner. And that means that it can no longer be said that the question of who opens a car door in a traffic stop is an "incidental factor" that "elevate[s] form over substance." *James*, 2000 UT 80, ¶ 13.

¶24 We thus repudiate the sweeping statement of our holding in *James* along these lines. *See State v. Silva*, 2019 UT 36, ¶ 20, 456 P.3d 718 (noting our obligation to follow binding precedent from the U.S. Supreme Court, and to repudiate our case law when it becomes clear that it has become overtaken by it). And we hereby clarify that the identity of a door-opener may well have constitutional significance under the Fourth Amendment.

¶25 In so stating we need not and do not hold that a Fourth Amendment "search" is effected every time a police officer opens the door of a vehicle. Nor do we decide whether or under what circumstances any such search would qualify as "unreasonable." The resolution of these questions is not necessary to our disposition of this case given our holding in Part II.B. that there is no basis for exclusion under *Davis v. United States*, 564 U.S. 229 (2011).

¶26 Our holding is accordingly limited. We simply repudiate our sweeping conclusions in *James* about the constitutional insignificance of the identity of the person who causes a car door to be opened. And we leave for another day the articulation of additional considerations of relevance to the determination of the

_____

[6] *See id*. at 409 (distinguishing *United States v. Knotts*, 460 U.S. 276 (1983), and *United States v. Karo*, 486 U.S. 705 (1984), in which electronic tracking devices had been implanted in certain containers on the ground with the "consent" of the original or prior owner of the container; also citing *On Lee v. United States*, 343 U.S. 747, 751–52 (1952), for the proposition that there is "no search or seizure where an informant, who was wearing a concealed microphone, was invited into the defendant's business").

constitutional reasonableness of any search effected by an officer who opens a car door without consent.

B

¶27 Despite repudiating the sweeping standard set forth in *James* we nonetheless affirm the denial of Malloy's motion to suppress on the basis of that standard. We do so not because the *James* standard is still good law. In light of this opinion, it is not.

¶28 But *James* stood as controlling precedent at the time of the traffic stop in question here. And the police thus had an objective, good-faith basis for the manner and means of their encounter with Malloy—a basis that forecloses the application of the remedy of exclusion.

¶29 This follows clearly from *Davis v. United States*, 564 U.S. 229 (2011). *Davis* emphasizes that the Fourth Amendment "says nothing about suppressing evidence obtained in violation" of its commands. *Id*. at 236. It notes that the exclusionary rule is "a 'prudential' doctrine, created by" the Supreme Court "to deter future Fourth Amendment violations." *Id*. at 236–37 (citations and internal quotation marks omitted). And it makes clear that the exclusionary rule has been limited "to situations in which" the purpose of deterrence "is thought most efficaciously served." *Id*. at 237 (citation and internal quotation marks omitted). "For exclusion to be appropriate" under the *Davis* line of cases, "the deterrence benefits of suppression must outweigh its heavy costs." *Id*.

¶30 *Davis* notes that "the deterrence benefits of exclusion 'var[y] with the culpability of the law enforcement conduct' at issue." *Id*. at 238 (citation omitted). "When the police exhibit 'deliberate,' 'reckless,' or 'grossly negligent' disregard for Fourth Amendment rights, the deterrent value of exclusion is strong and tends to outweigh the resulting costs." *Id*. (citation omitted). "But when the police act with an objectively 'reasonable good-faith belief' that their conduct is lawful, or when their conduct involves only simple, 'isolated' negligence, the 'deterrence rationale loses much of its force,' and exclusion cannot 'pay its way.'" *Id*. (citations and internal quotation marks omitted).

¶31 Over time the Court has "applied this 'good-faith' exception across a range of cases." *Id*. It has "'never applied' the exclusionary rule to suppress evidence obtained as a result of nonculpable, innocent police conduct." *Id*. at 240. And in *Davis*, the Court specifically declined to condone the remedy of

exclusion where the search under review was performed in reliance on "binding appellate precedent." *Id.* at 241. Law enforcement officers are expected to "take care to learn 'what is required of them' under Fourth Amendment precedent" and to "conform their conduct to these rules." *Id.* (citation omitted). "[W]hen binding appellate precedent specifically *authorizes* a particular police practice, well-trained officers" can be expected to use the authorized "tool to fulfill their crime-detection and public safety responsibilities." *Id.* "An officer who conducts a search in reliance on binding appellate precedent does no more than 'ac[t] as a reasonable officer would and should act' under the circumstances." *Id.* (alteration in original) (citation and internal quotation marks omitted). And under *Davis*, there is thus no basis for "the harsh sanction of exclusion" in that event. *Id.*

¶32 We affirm on this basis. Our *James* decision was binding appellate precedent on the day when the police confronted Malloy at McDonald's. The police acted in good-faith, reasonable reliance on that precedent when they opened the door of his car as an incident of their investigation of reports of his erratic driving. And that good-faith basis forecloses the applicability of the exclusionary rule.

III

¶33 Despite what we said in *James*, it is now clear that there can be a constitutional difference between a police officer's act of opening a car door and that same officer's request that a driver do so. Our broad holding to the contrary in *James* was good law at the time of the search at issue here, however, and we affirm on the ground that the exclusionary rule does not apply where law enforcement relied reasonably on then-existing precedent.

———————————